# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

K & W PROPERTY GROUP, LLC, a Florida
limited liability company,

     Plaintiff,                          CASE NO:

  v.

CITY OF TEMPLE TERRACE, a political
subdivision of the State of Florida,

     Defendant.

_____/

## COMPLAINT
### (Declaratory, Injunctive, and Other Relief Requested)

Plaintiff, K & W PROPERTY GROUP, LLC, a Florida limited liability company ("Plaintiff" or "K&W"), by and through its undersigned counsel, hereby files its Complaint against Defendant, CITY OF TEMPLE TERRACE, a political subdivision of the State of Florida ("Defendant", "City" or "Temple Terrace"), and states as follows:

### Jurisdiction and Venue

1.    This Court has proper jurisdiction over the subject matter of this matter pursuant to 28 U.S.C. § 1331, as this action arises under the laws of the United States, specifically 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

2.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1)

because Defendant is situated in the district, and pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

### The Parties

3.    Plaintiff K&W is a Florida limited liability company with its principal place of business located at 6804 Bluffs Boulevard, Tampa, 33617.

4.    Defendant is a political subdivision of the State of Florida duly organized and existing under the laws of the State of Florida, and the City Council is the governing body of the City.

### General Allegations

5.    Defendant has adopted and is charged with enforcement of an ordinance regulating the removal and trimming of trees within the City  (the "Tree Ordinance"). A copy of the Tree Ordinance (Division 8 of the City Code) is **attached hereto as Exhibit "A"** and incorporated herein by reference.

6.    K & W owns property within Temple Terrace, Florida, identified as Hillsborough County folio number 038184-0105, and more particularly described as:

> Tract beginning 660.88 feet south and 25.00 feet east of the northwest corner of the Southwest ¼ of Section 24, Township 28 South, Range 19 East, Hillsborough County, Florida, run thence east, a distance of 318.00 feet; run thence south, a distance of 120.00 feet; run thence east, a distance of 220.00 feet; run thence south, a distance of 210.00 feet; run thence west, a distance of 538.00 feet and north, a distance of 330.00 feet to the point of beginning.

Less and except the following:

Tract beginning 660.88 feet south and 25.00 feet east of the northwest corner of the southwest ¼ of Section 24, Township 28 South, Range 19 East, Hillsborough County, Florida, run thence east, a distance of 121.58 feet; run thence south, a distance of 165.00 feet; run thence west, a distance of 121.58 feet and run thence north, a distance of 165.00 feet to the point of beginning.

(Hereinafter referred to as the "K&W Property).

7.      On January 15, 2021 the City issued a Notice of Violation against K&W for the alleged cutting and/or removal of twenty-six (26) trees on the K&W Property without obtaining a permit from the City, a purported violation of the City's Tree Ordinance. A copy of the Notice of Violation is **attached hereto as Exhibit "B"** and incorporated herein by reference.

8.      An Amended Notice of Violation was issued by the City to the Plaintiff on February 4, 2021. A copy of the Amended Notice of Violation is **attached hereto as Exhibit "C"** and incorporated herein by reference.

9.      K&W vigorously protested the Code Enforcement action brought by the City against them for the trimming and removal of trees on the K&W Property. K&W provided an arborist letter stating that the trees removed were a danger to persons or property, in compliance with the requirements for exemption from local regulation pursuant to Fla. Stat. 163.045.

10.     By Order dated February 15th, 2021, the City, through its Code Enforcement Board, found K&W in violation of the Tree Ordinance and fined K&W one-hundred thirty thousand dollars ($130,000) for the alleged violation. A copy

of the Order is **attached hereto as Exhibit "D"** and incorporated herein by reference.

11.     During all times pertinent to this action, Fla. Stat 163.045 was in effect. Fla. Stat. 163.045 exempted certain tree trimming or removal on "residential" property from local government regulation.

12.     The K&W Property was and is zoned Residential Multi-family (RMF) by the City.

13.     The K&W Property has a City-designated Land Use Classification of R-9, a residential classification.

14.     Notably, at or about the same timeframe as the prosecution of K&W, the City was assisting a local golf course, owned by the City and operated by a private entity, Temple Terrace Golf & Country Club (the "Golf Course"), in cutting and removing at least sixty-four (64) trees from the Golf Course property.

15.     The Tree Ordinance does <u>not</u> exempt City property from compliance.

16.     Neither the City nor the Golf Course Operator applied for or obtained a tree trimming or removal permit prior to or after removing the trees from the Gold Course property, as required by the Tree Ordinance.

17.     The Golf Course is zoned PRS-Preservation by the City and is designed by the City of Temple Terrace Comprehensive Plan as a "District Park."

18.     Unlike the K&W Property, the Golf Course property is not zoned for residential, and residential uses are not allowed on the Golf Course.

19.     To the best of Plaintiff's knowledge and belief, in addition to the tree removal on the Golf Course not being located on "residential" property, the Golf Course property owner (i.e. the City) never obtained or attempted to obtain an arborist documentation that the trees to be trimmed and removed without a City permit were a danger to persons or property, as is required by Fla. Stat. 163.045.

20.     In the Fall of 2020 when the Golf Course tree removal was occurring, the language of Fla. Stat. 163.045 was identical to that in effect in January and February of 2021, when the City was prosecuting K&W for violations of the Tree Ordinance (thereafter, Fla. Stat. 163.045 was substantially amended by the Florida Legislature, effective July 1, 2022).  Prior to July 1, 2022, Fla. Stat. 163.045(1) stated:

> (1) A local government may not require a notice, application, approval, permit, fee, or mitigation for the pruning, trimming, or removal of a tree on residential property if the property owner obtains documentation from an arborist certified by the International Society of Arboriculture or a Florida licensed landscape architect that the tree presents a danger to persons or property.

21.     When City residents began to complain and question the City regarding the tree trimming and removal on the Golf Course, Charles W. Stephenson, then-City Manager responded by instructing City employees to " ... post something on line [sic] about the golf course project and the new law about no permits needed to take trees down on private property."  A copy of the City Manager's August 7, 2020 email (included in an email thread) is ***attached hereto as Exhibit "E"*** and incorporated herein by reference.

22.    City Manager Stephenson further responded to a resident complaint regarding the Golf Course tree cutting on October 8, 2020, stating:

> "The trees being removed along the golf course is a Temple Terrace Golf and Country Club project, not a City initiated one. Tree removals according to current Florida Statute do not require direct involvement or approvals from government entities. This Statute would include the Club's activities."

*See* Exhibit "E".

23.    The City's Acting Mayor, Andrew Ross, further responded to the same citizen's complaint on October 12, 2020, writing:

> I do have some info about the tree regulations/laws though. You are correct that TT always had very strict tree ordinances that required approval of the city, a permit, replanting and other things in order to trim or remove certain species of trees. **Our entire ordinance was preempted by the state legislature last year, however. It is now illegal for any local government to require approval or permits for any tree trimming or removal. So a property owner can now cut any trees they want and there is nothing the city can do about it anymore.** We and other cities fought this in Tallahassee but we lost.

*See* Exhibit "E". (Emphasis added).

24.    Just three (3) months after the afore-described communications, wherein the City unequivocally absolved itself from responsibility for the unpermitted cutting of over sixty (60) healthy trees on non-residential property owned by the City, the City intentionally, selectively and punitively undertook prosecution of K&W for tree removal on its *residential* property, eventually fining K&W $130,000.00.

25.    On November 16, 2022, K&W, through counsel, made a formal

request to the City for a fine elimination pursuant to Fla. Stat. 162.09(2)(c) and Sect. 1-72(h) of the City's Code.  A copy of the November 16, 2022 letter is **attached hereto as Exhibit "F"** and incorporated herein by reference.

26.   The City refused K&W's request, and even further refused to place K&W's request for fine elimination on a City agenda, denying K&W the ability to present its request in a public hearing.

27.   The City has recently furthered its campaign against K&W by filing a lawsuit in Florida state court to foreclose on the K&W Property for the unpaid fine amount[1].

## COUNT I

28.   Plaintiff restates and reincorporates paragraphs 1 through 27 above, as though fully set forth herein.

29.   The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a mandate that all similarly situated persons be treated alike.

30.   The City has violated the Equal Protection Clause by selectively and punitively enforcing its Tree Ordinance against K&W, through:

    a.   Treating K&W differently from other similarly situated entities;

    b.   Unequally applying a facially neutral ordinance for the purpose of discriminating against K&W;

---

[1] City of Temple Terrace v. K & W Property Group, LLC, Hillsborough Co. Circuit Court Case No. 2023-CA-011732.

    c. Such discrimination was and is being conducted by the City through:

        i. Overtly and with knowledge and intent, excusing unpermitted tree trimming and removal on City property, in violation of the Tree Ordinance, while virtually simultaneously prosecuting K&W for an alleged similar violation;

        ii. Fining K&W $130,000.00 by Order of the City Code Enforcement Board, a City body with final policymaking authority;

        iii. Filing legal action to foreclose on the K&W Property to enforce the unlawful action taken by the City through its intentional selective and punitive enforcement of the Tree Ordinance.

31.   All of the acts of Defendant, and its officers, agents, and/or employees were executed and are continuing to be executed by Defendant under the color and pretense of the policy, statutes, ordinances, regulations, customs, and/or usages of the City of Temple Terrace.

32.   Plaintiff has suffered and continues to suffer irreparable harm from the conduct of Defendant.

33.   Plaintiff has no adequate or speedy remedy at law to correct or redress the deprivation of its rights by Defendant.

34.   Unless the conduct of Defendant is enjoined, Plaintiff will continue to suffer irreparable injury.

35.   The City's conduct has been wanton and intentional, accordingly, punitive damages should be awarded in favor of the Plaintiff and against the City pursuant to 42 U.S.C. § 1983.

WHEREFORE, for the reasons laid out above, Plaintiff, K & W PROPERTY GROUP, LLC, respectfully requests the Court to enter final judgment against the Defendant, CITY OF TEMPLE TERRACE, as follows:

A.    That this Court issue a Preliminary and Permanent Injunction, restraining Defendant, its officers, agents, employees, and all other persons acting in active concert with them, from maintaining any action whatsoever against K&W regarding the activities subject of City Code Enforcement Case No. 21-00000256, including but not limited to prosecution of the alleged Tree Ordinance violation, recording of liens or other notice of fines or penalties against the K&W Property, or foreclosing on any such liens or penalties previously filed.

B.    That this Court render a Declaratory Judgment declaring unconstitutional Defendant's prosecution of K&W through Case No. 21-00000256 and rendering void the City Code Enforcement Board's February 15, 2021 Order.

C.    That this Court adjudge, decree, and declare the rights and other legal relations of the parties to the subject matter here in controversy, in order that such declarations shall have the force and effect of final judgment.

D.    That this Court enter an award of compensatory and punitive damages in favor of K&W and against the City.

E.    That this Court award Plaintiff's costs and expenses of this action, including a reasonable attorneys' fees award, in accordance with 42 U.S.C. § 1988 and other applicable law.

F.    That this Court grant such other and further relief as the Court deems equitable, just, and proper in the circumstances.

Respectfully submitted this _9th_ day of June 2023.

/S/ *Lindsay C. T. Holt*

**Lindsay C. T. Holt, Esq.**
Florida Bar No. 0041179
**Matthew D. Black, Esq.**
Florida Bar No. 0546224
CRAWFORD, MODICA & HOLT,
CHARTERED ATTORNEYS AT LAW
702 W. Montrose Street
Clermont, FL 34711
Tel. No. 352-432-8644
lholt@cmhlawyers.com
service@cmhlawyers.com
aeli@cmhlawyers.com

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

K & W PROPERTY GROUP, LLC, a Florida
limited liability company,

     Plaintiff,                                CASE NO:

  v.

CITY OF TEMPLE TERRACE, a political
subdivision of the State of Florida,

     Defendant.
_____/


# *EXHIBIT "A"*

**(TO COMPLAINT)**
**(Declaratory, Injunctive, and Other Relief Requested)**

DIVISION 8. - TREE REMOVAL AND TRIMMING

Sec. 12-762. - Definitions.

The following words, terms and phrases, when used in this division, shall have the meanings ascribed to them in this section, except where the context clearly indicates a different meaning:

*American National Standards Institute (ANSI)* is a private, nonprofit organization that administers and coordinates the standardization and conformity assessment system. For the purposes of this division, ANSI references relate to the American National Standard for Tree Care Operations—Trees, Shrubs and Other Woody Plant Maintenance—Standard Practices (ANSI A300-2001, as amended), which is incorporated herein by reference.

*Approved trees* are those trees listed in Table 1 of section 12-772.

*Canopy coverage* means the combined total area on a parcel of land covered by tree canopy. The canopy coverage for a parcel of land is calculated by adding together the area of each grand tree's and each protected tree's canopy to the drip-line.

*Cluster of trees* means a stand of protected trees, three (3) or more, within a ten-foot radius where at least three (3) of the trees have an individual trunk diameter of fifteen (15) inches or greater at D.B.H.

*Critical root zone* is determined by measuring from the trunk in all directions, one foot for each inch of the diameter of the tree, measured at D.B.H.

*D.B.H.* means a standard for the measurement of the trunk diameter of a tree at breast height or fifty-four (54) inches.

*Drip-line* means the extent of the tree's outer branches.

*Exempt tree* means any tree listed in Table 3 of section 12-772 that may be removed without a permit.

*Forested native plant communities* means those plant communities, including, but not limited to, shrubs and ferns, which naturally occur in the city.

*Grand tree* means any tree listed in Table 1 of section 12-772 with a diameter of twenty-four (24) inches or greater at D.B.H.

*Non-wooded land* means a parcel of land with less than twenty (20) percent canopy coverage, exclusive of wetlands. If forested native plant communities are identified on site, the area encompassing the forested native plant communities may be considered as canopy coverage for the purpose of this definition.

*Semi-wooded land* means a parcel of land with less than thirty-five (35) percent, but with twenty (20) percent or more canopy coverage, exclusive of wetlands. If forested native plant communities are identified on site, the area encompassing the forested native plant communities may be considered as canopy coverage for the purposes of this definition.

*Topping* means the cutting back of tree branches to stubs or lateral branches that are not large enough to assume the terminal role. Other names for topping include heading, tipping, hat-racking, lions tailing and rounding over.

*Wooded land* means a parcel of land, with thirty-five (35) percent or more canopy coverage, exclusive of wetlands. If forested native plant communities are identified on site, the area encompassing the forested native plant communities may be considered as canopy coverage for the purpose of this definition.

(Code 2001, § 25.735.2; Ord. No. 1309, § 2(25.735.2), 2-21-2012; Ord. No. 1399, § 4(Exh. D), 7-19-2016 )

Sec. 12-763. - Penalties.

In the event a protected tree or grand tree is removed intentionally despite a prohibition to do so, inadvertently removed or must be removed due to damage and/or carelessness during construction, replacement of the tree will be made pursuant to the following:

(1) The "additional penalty" formula shall be based on cross-sectional square inches D.B.H. The cross-sectional area of the trunk shall be determined by applying the formula:

$$C^2/4\pi = \text{additional penalty}$$

(where C = circumference and π = 3.14, or 22/7)

after measuring circumference four (4) feet six (6) inches above grade.

(2) A minimum of fifty (50) percent of the cross-sectional inches required pursuant to this penalty shall be located on the subject site.

(3) Additional penalties shall be applied to all tree losses incurred for a period up to one year of the date of completion of construction.

(4) When the protected tree or grand tree removed is a pine tree, only fifty (50) percent of the total calculated cross-sectional inches must be replaced. (Ord. No. 856, 12-21-1993)

(5) Any replacement trees that die within one year of being planted must be replaced within thirty (30) days of notice from the city.

(Code 2001, § 25.735.5; Ord. No. 856, 12-21-1993; Ord. No. 1309, § 2(25.735.5), 2-21-2012)

Sec. 12-764. - Purpose.

The purpose of this division shall be to regulate and control tree removal and tree trimming activities on all real property, public and private, within the city and to require a certain number of trees on all developed parcels.

(Code 2001, § 25.735.1; Ord. No. 1309, § 2(25.735.1), 2-21-2012)

Sec. 12-765. - Bi-annual review.

The city council shall review the provisions of this division and the requirements specified herein at least once every two (2) years to confirm that the provisions of this division are adequately meeting the city's goals of tree preservation without unduly prohibiting the beneficial use of land.

(Code 2001, § 25.735.10; Ord. No. 1309, § 2(25.735.10), 2-21-2012)

Sec. 12-766. - Appeals.

Any person adversely affected by a decision of the city manager in the enforcement or the interpretation of any of the terms or provisions of this division may appeal such decision to the city council. Such appeal shall be taken by filing written notice thereof with the city clerk, and no public hearing shall be required.

(Code 2001, § 25.735.9; Ord. No. 1309, § 2(25.735.9), 2-21-2012)

Sec. 12-767. - Scope.

(a) *Applicability.* Regulation of tree removal shall extend to all real property, public and private, being developed or improved in accordance with the provisions of this division.

(b) *Intent.* It is not the intent of this division to preclude the beneficial use of land when the terms of this division are inconsistent with the regulations or zoning standards of this LDC.

(c) *Exemptions.* Exemptions to the provisions of this division are:

(1) Commercial trees grown for sale are exempt from city regulations under this division.

(2) Bona fide commercial agricultural operations are exempt from city regulations under this division.

(3) Trees, not including grand trees, irreversibly damaged or destroyed by natural disaster, i.e., fire, wind, lightning, disease, etc., are exempt from city regulations under this division; however, a permit is required to remove any grand tree, whether damaged or not.

(4) Tree removal pursuant to an approved development of regional impact (DRI) and its development order is exempt from this division.

(5) Species listed under Table 3, Exempt and Invasive Species, which may be amended from time to time by city council, do not require a permit for removal.

(Code 2001, § 25.735.3; Ord. No. 1309, § 2(25.735.3), 2-21-2012)

Sec. 12-768. - Tree removal regulations and standards.

(a)  The following regulations shall apply to all land within the city and shall be cumulative to any other regulation provided for in this division.

(1)  *Permit required.* No protected tree shall be removed without first obtaining a permit from the city.

(2)  *Grand tree.* No grand tree or cluster of trees of any species listed in Table 1 of section 12-772 shall be removed without a permit from the city. A permit shall only be issued upon a finding of the following:

a.  The removal is to the benefit of the public health, safety and welfare, or the existence of the tree presents a clear and present danger. Under these conditions, when removal is authorized, no replacement trees are required.

b.  The presence of the grand tree or cluster of trees prohibits the property owner from the beneficial use of his property. Under these conditions, when removal is authorized, one replacement shade tree (three-inch D.B.H.) is required (see Table 1 of section 12-772).
(Ord. No. 856, 12-21-1993; Ord. No. 1044, 5-15-2001)

(b)  Removal of trees in conjunction with development. In order to remove protected trees on property which is zoned or intended for development of multifamily, commercial, office, institutional or research corporate park uses, a bona fide development plan must be submitted to the city. Removal of protected trees may only be made pursuant to a permit issued by the city and in conformance with the following regulations:

(1)  *Protected trees on wooded land.*

a.  Fifty (50) percent of the protected trees on a site may be removed provided minimum protected tree canopy coverage of twenty-five (25) percent remains.

1.  If removal of fifty (50) percent of the protected trees would result or does result in a protected tree canopy coverage that is below the twenty-five (25) percent standard provided in subsection (b)(1)a of this section, but remains above seventeen (17) percent, the deficit shall be made up by receiving credit for new trees planted, including those trees planted pursuant to the landscaping regulations contained in the City Code. However, the developer shall only receive fifty (50) percent credit for the tree canopy created by the new plantings, assuming the trees are at a ten-year maturity.

2.  When a developer is required to make up lost canopy with one-half (½ percent) credit for new landscaping at ten-year maturity, he shall not be required to replace more than five (5) percent lost canopy.

   b. If after removing fifty (50) percent of the protected trees, a parcel still has more than a twenty-five (25) percent protected tree canopy coverage, the developer may remove additional protected trees provided they do not degrade the protected tree canopy coverage below twenty-five (25) percent; however, the additional trees allowed to be removed pursuant to this subsection shall be replaced in accordance with the Tree Equivalency Table (Table 2 of section 12-772) and the excess removal requirements outlined in subsection (b)(1)d of this section.

   c. Protected tree removal resulting in a protected tree canopy coverage of less than seventeen (17) percent is prohibited.

   d. Excess removal requirements. Where protected trees are removed from wooded land as provided for in subsection (b)(1)b of this section, either of the following excess removal requirements shall be invoked to compensate for each protected tree removed.

     1. Replacement. The developer shall be required to replace a protected tree by an equivalent number of approved trees, in accordance with the provisions of Table 2 of section 12-772, elsewhere on the same parcel undergoing development, or on the public right-of-way contiguous to the parcel, upon approval of the city. Replacement trees on the parcel undergoing development shall be maintained in perpetuity by the developer or his assignee. For every five (5) trees required, there shall be a minimum of one species provided, up to a minimum of eight (8) species, when forty (40) or more trees are required. Where more than one species is required, even distribution shall be strived for and subject to city approval through the associated development review process.

     2. Contribution. The developer shall offset the removal of a protected tree pursuant to the following: Donating the dollar value in accordance with the provision of Table 2 of section 12-772 pursuant to the then current wholesale cost of a three-inch D.B.H. live oak tree, including the cost of transportation and planting as determined by the city manager or designee, to the city's tree and landscape beautification fund. At the time of permitting and prior to tree removal, the developer shall pay into the fund the lump sum dollar amount determined and shall provide proof of this satisfaction.

     The use of contributed funds shall be limited to:

      • The operation of the Adopt-a-Tree program.

      • The planting of trees on public lands which shall be at the city administration's sole discretion.

      • The removal of sick, dying, infested, dangerous, or dead tree(s) on public lands after such determination has been made by the city arborist and upon the adoption of a resolution by the city council approving the use of the city's tree and

landscape beautification fund for such purpose. A replacement tree shall be planted for each tree removed under this subsection. Replacement trees shall meet the quality of standards in this Code and be planted, installed, and maintained according to the requirements of this Code.

This contribution is hereby established to mitigate on-site tree replacement to offset site constraints that may occur during the development process. A protected tree cannot be contributed, unless the maximum possible numbers of protected trees, grand trees or tree equivalents have been incorporated into the site.

(2) *Protected trees on semi-wooded land.*

a. Fifty (50) percent of the protected trees on a site may be removed provided a minimum protected tree canopy coverage of twenty-five (25) percent remains.

b. If removal of fifty (50) percent of the protected trees would result or does result in a protected tree canopy coverage that is below the twenty-five (25) percent standard, the deficit shall be made up by receiving credit for new trees planted, including those trees planted pursuant to the landscaping regulations contained in the City Code. The developer shall receive one hundred (100) percent credit for the tree canopy created by the new plantings, assuming the trees are at a ten-year maturity.

c. Protected tree removal resulting in a protected tree canopy coverage of less than ten (10) percent is prohibited.

(3) *Protected trees on non-wooded land.*

a. Thirty (30) percent of the protected trees on a site may be removed; however, the goal of this division is to achieve at least a twenty-five (25) percent canopy coverage subsequent to development. The deficit below the twenty-five (25) percent canopy coverage goal shall be made up by receiving credit for new trees planted, including those trees planted pursuant to the landscaping regulations contained in the City Code. The developer shall receive one hundred (100) percent credit for the tree canopy created by the new plantings, assuming the trees are at a ten-year maturity.

b. When a developer is required to provide additional canopy pursuant to subsection (b)(3)a of this section, he shall not be required to provide more than ten (10) percent new canopy.

(4) *Subdivision.* No more than thirty (30) percent of the protected trees (at least five (5) inches in diameter at D.B.H.) shall be removed for infrastructure improvements in conjunction with the development of a single-family subdivision.

(5) *Phased developments.* For phased developments, the regulations contained in this division shall be applicable to the entire development parcel; however, permits will only be issued for the phases under construction.

(6) *Relocation.* The relocation of a protected tree elsewhere on the same parcel undergoing development, or on public right-of-way contiguous to parcel, or on other public lands upon approval of the city, shall not be counted as removed under the provisions of this division. In the event a relocated tree is subsequently removed from the developed parcel for any reason, the replacement or contribution requirement provided for in subsection (b)(1)d of this section shall be imposed.

(7) *Tree plot plan requirements.* A tree plot plan is required to support every application for a building permit for new construction, and shall include the following:

    a. General location of all protected and invasive trees and identification by type and size (D.B.H.).

    b. Location of proposed structures, "footprints" and other impervious surfaces.

    c. Indication of protected trees to be retained and protected trees to be removed, including dead trees.

    d. The above items shall be field-checked by the department and approval or disapproval (with suggestions) shall be expressed in writing on the permit application.

(Ord. No. 1044, 5-15-2001)

(Code 2001, § 25.735.4; Ord. No. 856, 12-21-1993; Ord. No. 1044, 5-15-2001; Ord. No. 1309, § 2(25.735.4), 2-21-2012; Ord. No. 1520 , § 2, 1-18-2022)

Sec. 12-769. - Protection during construction.

(a) Prior to construction, the developer shall erect an approved protective barrier around all trees to be preserved.

(b) A protective barrier shall be placed such that land disturbance cannot occur closer to the trunk than one-third into the critical root zone. Similarly, at no time shall any construction materials or temporary solid deposits be placed between the protected tree and protective barrier.

(c) Except with specific approval from the director, no land clearing or construction activity shall occur within a ten-foot radius from the trunk of any tree to be retained; or within a ten-foot radius from the trunk of any tree within a cluster to be retained; and no land clearing or construction activity shall occur within a twenty-five-foot radius from the trunk of any grand tree.

(d) No attachments, wires (other than protective guy wires), signs, or permits may be fastened to any retained or relocated tree during land clearing or construction activity.

(e) A tree of the required size and type shall replace any tree that dies within one year from, as applicable, completion of construction of the associated infrastructure improvements. Planting of such tree shall take place within thirty (30) days unless an extension is requested by the applicant

and granted by the city. To increase the likelihood of survivability of such tree, it may be located elsewhere on the site if given prior approval.

(Code 2001, § 25.735.6; Ord. No. 1309, § 2(25.735.6), 2-21-2012)

Sec. 12-770. - Final approval and performance bond.

(a) Final approval of any development activity involving tree removal will be subject to the satisfactory relocation, replacement, or contribution of trees as required in this division.

(b) Prior to commencing any land development activity, developer/builders shall provide the city with an irrevocable letter of credit covering the value of all trees to be relocated, replaced, or contributed prior to commencing the clearing of land or removal of trees. The amount of the letter of credit shall be based on the number and cost of replacement of trees as determined by Table 2 in section 12-772, at the current wholesale cost of said tree, to be determined by the city manager.

(Code 2001, § 25.735.7; Ord. No. 1309, § 2(25.735.7), 2-21-2012)

Sec. 12-771. - Tree trimming/invasive trees.

(a) All tree trimming shall be in accordance with standard pruning practices as set forth in the American National Standard for Tree Care Operations—Trees, Shrubs and Other Woody Plant Maintenance—Standard Practices (ANSI A300-2001, as amended). Said standards are incorporated herein by reference. Pruning or trimming a tree inconsistent with ANSI standards is prohibited.

(b) No grand tree or any protected tree shall have branches trimmed without a permit when said branches to be trimmed measure ten (10) inches in diameter or greater.

(c) Invasive trees. The elimination and removal of invasive trees listed in Table 3 of section 12-772 is required during site development.

(d) Topping of any tree is prohibited.

(Code 2001, § 25.735.8; Ord. No. 1309, § 2(25.735.8), 2-21-2012)

Sec. 12-772. - Approved trees; tree equivalency table; exempt and invasive trees.

TABLE 1. APPROVED TREE LIST

| Ash* | *Fraxinus spp.* |
|---|---|
| Bottlebrush | *Callistemon spp.* |

| Camphor* | *Cinnamomum camphora* |
| Chickasaw Plum | *Prunus angustifolia* |
| Chinese Fan Palm | *Livistona chinesis* |
| Crape Myrtle | *Lagerstroemia indica* |
| Cypress* | *Taxodium spp.* |
| Date Palm | *Phoenix spp.* |
| Dogwood* | *Cornus spp.* |
| Elm* | *Ulmus spp.* |
| European Fan Palm | *Chamoerops humilis* |
| Flatwoods Plum | *Prunus umbellata* |
| Golden Rain Tree* | *Koelreuteria elegans* |
| Holly* | *Ilex spp.* |
| Hornbeam | *Carpinus spp.* |
| Indian Rosewood* | *Dalbergia sissoo* |
| Jerusalem Thorn | *Parkinsonia aculeata* |
| Ligustrum | *Ligustrum spp.* |
| Loblolly Bay* | *Gordonia lasianthus* |
| Loquat | *Eriobotrva japonica* |
| Magnolia* | *Magnolia spp.* |

| Maple* | *Acer spp.* |
|---|---|
| Needle Palm | *Rhapidophyllum hystrix* |
| Oak* | *Quercus spp.* |
| Pecan* | *Carya spp.* |
| Pignut Hickory* | *Carya glabra* |
| Pine* | *Pinus spp.* |
| Podocarpus | *Podocarpus spp.* |
| Redbud | *Cercis canadensis* |
| Red Cedar | *Juniperus spp.* |
| River Birch | *Betula nigra* |
| Sabal/Cabbage Palm | *Sabal palmetto* |
| Sycamore* | *Platanus or Plantus spp.* |
| Sugarberry* | *Celtis laevigata* |
| Sweetgum* | *Liquidambar styraciflua* |
| Tulip Poplar* | *Liriodendron tulipifera* |
| Washington Palm | *Washington robusta* |
| Wax Myrtle | *Myrica cerifera* |
| Willow | *Salis or Salix spp.* |

* = Shade trees for purposes of section 12-768(a)(2)b.

TABLE 2. TREE EQUIVALENCY TABLE

| D.B.H. of Protected Tree | Equivalent Number of Replacement Trees 3″ Diameter |
|---|---|
| 5—7 inches | 2 |
| 8—12 inches | 4 |
| 13—19 inches | 6 |
| 20—23 inches | 10 |

Grand trees and cluster of trees, except pine, shall be replaced on a two hundred (200) percent actual diameter inch basis (D.B.H.). Pine trees shall be replaced on a fifty (50) percent actual diameter inch basis (d.b.h.).

Example:

Grand tree (oak) 24 inches d.b.h. = 48 replacement diameter inches.

Replace with sixteen (16) three-inch diameter trees.

TABLE 3. EXEMPT AND INVASIVE TREES

| Australian Pine | *Casuarina spp.** |
|---|---|
| Black/Wild Cherry | *Prunus serothina* |
| Brazilian Pepper | *Schun terebinthifolius** |
| Catclaw Mimosa | *Mimosa pigra** |
| Cherry Laurel | *Prunus caroliniana* |
| Chinaberry | *Melia azedarach** |
| Chinese Tallow | *Sapium sebiferum** |
| Citrus Tree | *Citrus spp.* |
| Earleaf Acacia | *Acacia aurifuliformis** |
| Ear Tree | *Enterolobium contortisiliquum** |

| Eucalyptus | *Eucalyptus spp.* |
|---|---|
| Indian Rosewood | *Dalbergia sissoo* |
| Lead Tree | *Leucaena leucocephela*\* |
| Monkey Puzzle | *Aauracaria wrightii* |
| Mulberry | *Broussonetia papyrifera*\* |
| Orchid Tree | *Bauhinia veriegata*\* |
| Punk Tree | *Melaleuca quinquernervia*\* |
| Queen Palm | *Arecastrum romanzoffianum* |
| Silk Oak | *Grevillea robusta*\* |
| Surinam Cherry | *Eugenia uniflora*\* |
| Woman's Tongue | *Albizia lebbek*\* |

\*Denotes invasive trees that must be removed during site development per section 12-771(c).

(Code 2001, § 25.735.11; Ord. No. 856, 12-21-1993; Ord. No. 1044, 5-15-2001; Ord. No. 1309, § 2(tables 1—3), 2-21-2012; Ord. No. 1399, § 4(Exh. D), 7-19-2016 )

Secs. 12-773—12-795. - Reserved.

**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

K & W PROPERTY GROUP, LLC, a Florida
limited liability company,

      Plaintiff,                                     CASE NO:

  v.

CITY OF TEMPLE TERRACE, a political
subdivision of the State of Florida,

      Defendant.
_____/

# *EXHIBIT "B"*

## <u>(TO COMPLAINT)</u>
**(Declaratory, Injunctive, and Other Relief Requested)**



**TEMPLE TERRACE**
*Amazing City. Since 1925.*

# NOTICE OF VIOLATION

**January 15, 2021**

**Case Number: 21-0256**

**K AND W PROPERTY GROUP LLC**
**6804 BLUFFS BLVD**
**TAMPA, FL  33617-2607**

Public records indicate that you are the property owner or responsible party for the below cited address, located within the City of Temple Terrace:

**Property Address:  8903 N 78TH ST**

The above-cited property address was inspected on **January 15, 2021** and the attached violations were found. These violations must be corrected prior to **January 25, 2021**. Failure to correct the attached violations prior to this date could result in referral of the case to the Municipal Code Enforcement Board for adjudication [Florida Statute 162.06(2)]. If the violations are corrected and then recur within forty-five (45) days of service of this Notice of Violation, the case may be presented to the Municipal Code Enforcement Board even if the violation has been corrected prior to the Municipal Code Enforcement Board hearing.  Be aware that legal action by the Board could result in **fines up to $250.00 per day that would be assessed as liens on the property**.

Our goal is to achieve compliance through voluntary measures. When the attached violation(s) are corrected, contact our Code Compliance staff at **813-376-0449** to schedule a re-inspection and verify corrective action.  Thank you in advance for your assistance and cooperation in this matter.

Sincerely,

**Jose M. Silva**
**Code Compliance Officer**
CodeCompliance@templeterrace.com

CC:  **Elfallah Khaled Registered Agent**
     **6804 Bluffs Boulevard**
     **Tampa, Fl 33617-2607**

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

K & W PROPERTY GROUP, LLC, a Florida
limited liability company,

     Plaintiff,                                                    CASE NO:

  v.

CITY OF TEMPLE TERRACE, a political
subdivision of the State of Florida,

     Defendant.
_____/

# *EXHIBIT "C"*

**<u>(TO COMPLAINT)</u>**
**(Declaratory, Injunctive, and Other Relief Requested)**



**TEMPLE TERRACE**
*Amazing City. Since 1925.*

# AMENDED
# NOTICE OF VIOLATION &
# NOTICE OF HEARING
# IRREPARABLE/IRREVERSIBLE VIOLATIONS

**February 4, 2021**

Case Number: **21-0256**

K AND W PROPERTY GROUP LLC
6804 BLUFFS BLVD
TEMPLE TERRACE, FL  33617-2607

Public records indicate that you are the property owner or responsible party for the below cited address, located within the City of Temple Terrace:

Property Address: **8903 N 78TH ST**
Folio No.: **038184.0105**

The above-cited property address was inspected on **December 10, 2020** and the attached violations were found.  The violations occurred sometime between October 26, 2020 and December 10, 2020. This case will be presented to the Municipal Code Enforcement Board (MCEB) on **February 10, 2020 at 6:30 p.m.** as irreparable/irreversible violations to determine whether the violations occurred, and if so, impose fines and the payment of any costs expended by the city to abate the violation.   The MCEB hearing will occur in **City Council Chambers at 11250 N. 56th Street, Temple Terrace, Florida.**

YOU ARE HEREBY ORDERED to appear before the MCEB at the above date and time to answer the attached charges and to present your side of the case.  Failure to appear will result in the MCEB proceeding with the case in your absence.  Be aware that a finding of violation(s) against you will result in **fines up to $5,000.00 per violation that would be assessed as liens on the property.**

All orders issued by the MCEB are recorded in the Official Records of Hillsborough County and will constitute a lien against the property where the violation(s) exist and all real or personal property owned by you in the county and any other county where the City records the order.

Should you desire, you have the right to obtain an attorney to represent you at your expense.  At the hearing, you will have the opportunity to present evidence and witnesses, as well as question the witnesses against you.  Should you wish to appeal the decision of the board, you will need a record of the proceedings and, therefore, will need to ensure that a verbatim recording is made of the proceedings.  Said record will be made at the Appellant's expense.

**Jose M. Silva**
**Code Compliance Officer**
CodeCompliance@templeterrace.com

**Code Compliance Department**
11250 NORTH 56TH STREET, 2nd FLOOR  •  TEMPLE TERRACE, FLORIDA 33617
PHONE  (813) 506-6680

EXHIBIT 1B

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

K & W PROPERTY GROUP, LLC, a Florida
limited liability company,

     Plaintiff,                                CASE NO:

   v.

CITY OF TEMPLE TERRACE, a political
subdivision of the State of Florida,

     Defendant.

_____/


# *EXHIBIT "D"*

### (TO COMPLAINT)
**(Declaratory, Injunctive, and Other Relief Requested)**



## TEMPLE TERRACE
*Amazing City. Since 1925.*

MUNICIPAL CODE ENFORCEMENT BOARD
TEMPLE TERRACE, FLORIDA

**CITY OF TEMPLE TERRACE, FLORIDA**
       **Petitioner**

**vs.**

    **K AND W Property Group LLC**
    **6804 Bluffs Blvd.**
    **Tampa, FL 33617-2607**
        **Respondent**        **CERTIFIED MAIL 7019 0700 0002 2637 7092**

**Case Number 21-0256**
**Property Address: 8903 N 78th Street, Temple Terrace, FL**
**Folio Number: 038184-0105**

**ORDER**

The above styled case came before the City of Temple Terrace Municipal Code Enforcement Board ("Board) on February 10, 2021.  The Board heard testimony under oath from the following City witnesses; Code Compliance Officer Jose Silva, City Arborist Joe Ferris, and Community Development Director Amir Anisi. The Respondent presented no witnesses.  The Board also received documentary evidence from the parties and heard argument from City Attorney Pamela Cichon and Respondent's legal representative David Singer, Esq.  Upon consideration of all the evidence presented, the Board hereby makes the following Findings and issues the following Order:

**FINDINGS**

1. That Respondent owned vacant wooded property located adjacent to N. 78th Street in the City of Temple Terrace ("Property").
2. That the Property was undeveloped and did not have an address until January 12, 2021, at which time the City assigned the Property the address of 8903 N. 78th Street.
3. That sometime prior to December 11, 2020, Respondent removed 26 trees, including 11 grand trees, from the Property, for which no permit was obtained.
4. That after the 26 trees were cut from the Property, Respondent provided the City with a letter dated October 26, 2020, from a certified arborist that stated he surveyed trees on a parcel located at 8105 N. 78th Street, which was not the address of the subject Property.
5. That a few days before the February 10, 2021 hearing, Respondent provided the City with another letter from the same arborist, dated October 19, 2020, which noted the condition of 28 trees located specifically at 8903 N. 78th Street, Temple Terrace, FL.
6. That on October 19, 2020, the Property did not have the address of 8903 N. 78th Street, and thus, it was not possible for the arborist to have provided his documentation to the Respondent by the date of October 19, 2020 that 26 trees were removed from the Property.

7. That Respondent intended to develop the subject property as multi-family, and has not submitted a development plan nor a tree survey to the City.

8. That Respondent's removal of 26 trees from the Property violated City of Temple Terrace Code sections:

>12-768(a)(1) – Tree Unlawful Removal
>
>12-768(a)(2) – Tree Removal Standards, and
>
>12-768(b)- Tree Removal in Development

9. That the removal of each tree constitutes a separate violation.

10. That the removal of the trees in violation of the City Code are violations that are irreparable or irreversible in nature.

In light of the foregoing findings, and in accordance with City Code Section 1-70(f) and Florida Statutes Section 162.09, the Board assesses a fine of $5,000.00 per violation/tree against the Respondent for the 26 trees that were removed for a total fine of **$130,000.00**.

A certified copy of this ORDER may be recorded in the Public Records of Hillsborough County, Florida, and once recorded shall constitute a lien against the land on which the violation exists and upon any and all real and personal property owned by the Respondent. Recordation of this ORDER shall constitute notice to all subsequent purchasers, successors in interest, or assigns.

Pursuant to Section 162.11, Florida Statutes, the aggrieved party (whether it be the Respondent or the City of Temple Terrace) may appeal this ORDER to the Circuit Court for the Thirteenth Judicial Circuit in and for Hillsborough County, Florida (the "Circuit Court"). An appeal of this ORDER to the Circuit Court must be filed within thirty (30) days of the date of this ORDER.

**DONE AND ORDERED this 15th Day of February 2021.**

David Pogorilich, Chairman,
**Municipal Code Enforcement Board**
**City of Temple Terrace, Florida**

**STATE OF FLORIDA**
**COUNTY OF HILLSBOROUGH**

I, the undersigned, duly appointed Deputy City Clerk of the City of Temple Terrace, Florida, HEREBY CERTIFY that the foregoing is a true and correct copy of the ORDER issued by the Municipal Code Enforcement Board on February 10, 2021, according to the official records of the City on file in the Office of the City Clerk. WITNESS my hand and the corporate seal of the City of Temple Terrace, Florida, this 15th Day of February, 2021.

Kristin Garcia, Deputy City Clerk

**This instrument was prepared by Kristin Garcia, Deputy City Clerk, City of Temple Terrace, 11250 N. 56th Street, Temple Terrace, FL, 33617.**

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

K & W PROPERTY GROUP, LLC, a Florida
limited liability company,

     Plaintiff,                          CASE NO:

  v.

CITY OF TEMPLE TERRACE, a political
subdivision of the State of Florida,

     Defendant.
_____/

# *EXHIBIT "E"*

### (TO COMPLAINT)
### (Declaratory, Injunctive, and Other Relief Requested)

August 6, 2020

**From:** Stephenson, Charles <CStephenson@templeterrace.com>
**Sent:** Thursday, August 6, 2020 4:08 PM
**To:** Ferris, Joseph <JFerris@Templeterrace.com>
**Cc:** Hayes, Laurie <LHayes@templeterrace.com>
**Subject:** RE: Tree Replacement Project

I would refer them to Jim Musick for explanation.  Laurie heard there is chatter on FB maybe we can put statement that this is a club project not city.

> Charles W. Stephenson
> City Manager
> City of Temple Terrace
> 813-506-6400
> cstephenson@templeterrace.com



**From:** Ferris, Joseph <JFerris@Templeterrace.com>
**Sent:** Thursday, August 6, 2020 1:31 PM
**To:** Stephenson, Charles <CStephenson@templeterrace.com>; jmusick@templeterracegolf.com
**Subject:** RE: Tree Replacement Project

Why are there so many healthy Live Oaks coming down, I've received phone calls and emails as well as residence asking while evaluating the trees on their property?

**From:** Jim Musick <jmusick@templeterracegolf.com>
**Sent:** Friday, July 10, 2020 5:01 PM
**To:** Stephenson, Charles <CStephenson@templeterrace.com>; Gilbert Schisler <Gschisl1@tampabay.rr.com>; joeaffronti@gmail.com; 'David Pogo' <david_pogo@hotmail.com>
**Cc:** Don Whittemore <dhw@whittemorepa.com>; John Nertney <jnertney@radiant.com>; Harold Astorquiza <Harold.Astorquiza@morganstanley.com>
**Subject:** Tree Replacement Project

Charles,

Sorry for the latest of the email but we just finished working out the schedule with the tree contractor.

I have attached what was given to Gil and David at our meeting this week and I'm sure Gil shared with you. This packet also includes a letter that Joe requested that Doug Faller, our superintendent, write as an explanation for this work.

In any event we are starting this Monday on hole Number 1 and the project will encompass the entire golf course. Plan is to be finished in 2 ½ to 3 weeks barring any substantial bad weather.

Please let us know if we can help with any noise you might receive from this project.

Thanks

Jim Musick
General Manager
Temple Terrace Golf & CC
813-988-1791 ext. 200
jmusick@templeterracegolf.com

*******************************************************************************
August 7, 2020

**From:** Stephenson, Charles <CStephenson@templeterrace.com>
**Sent:** Friday, August 7, 2020 10:28 AM
**To:** Ferris, Joseph <JFerris@Templeterrace.com>; Hayes, Laurie <LHayes@templeterrace.com>
**Subject:** RE: Tree Replacement Project

Lets post something on line about the golf course project and the new law about no permits needed to take trees down on private property.

Charles W. Stephenson
    City Manager
City of Temple Terrace
    813-506-6400
cstephenson@templeterrace.com

**From:** Ferris, Joseph <JFerris@Templeterrace.com>
**Sent:** Thursday, August 6, 2020 1:31 PM
**To:** Stephenson, Charles <CStephenson@templeterrace.com>; jmusick@templeterracegolf.com
**Subject:** RE: Tree Replacement Project

Why are there so many healthy Live Oaks coming down, I've received phone calls and emails as well as residence asking while evaluating the trees on their property?

**From:** Jim Musick <jmusick@templeterracegolf.com>
**Sent:** Friday, July 10, 2020 5:01 PM
**To:** Stephenson, Charles <CStephenson@templeterrace.com>; Gilbert Schisler <Gschisl1@tampabay.rr.com>; joeaffronti@gmail.com; 'David Pogo' <david_pogo@hotmail.com>
**Cc:** Don Whittemore <dhw@whittemorepa.com>; John Nertney <jnertney@radiant.com>; Harold Astorquiza <Harold.Astorquiza@morganstanley.com>
**Subject:** Tree Replacement Project

Charles,

Sorry for the latest of the email but we just finished working out the schedule with the tree contractor.

I have attached what was given to Gil and David at our meeting this week and I'm sure Gil shared with you. This packet also includes a letter that Joe requested that Doug Faller, our superintendent, write as an explanation for this work.

In any event we are starting this Monday on hole Number 1 and the project will encompass the entire golf course. Plan is to be finished in 2 ½ to 3 weeks barring any substantial bad weather.

Please let us know if we can help with any noise you might receive from this project.

Thanks

Jim Musick
General Manager
Temple Terrace Golf & CC
813-988-1791 ext. 200
jmusick@templeterracegolf.com

· · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·

October 8, 2020,

**From:** Jim Musick <jmusick@templeterracegolf.com>
**Sent:** Thursday, October 8, 2020 2:28 PM
**To:** Stephenson, Charles <CStephenson@templeterrace.com>; Ferris, Joseph <JFerris@Templeterrace.com>
**Cc:** LeBlanc, Ray <RLeBlanc@TempleTerrace.com>; Ross, Andrew <ARoss@Templeterrace.com>; Don Whittemore <dhw@whittemorepa.com>; John Nertney <jnertney@radiant.com>; Doug Faller <dfaller@templeterracegolf.com>
**Subject:** RE: Golf Course Trees Bannockburn BenAvon Area

Charles,

Yes sir I did tell you we were finished as I hoped we would be. But like most projects things change a little and if you even look at the photo you sent me the tree still standing is dead just like the two we took out.

Trust me we are not just taking trees out for the sake of it as you well know it cost money. The irrigation trunk lines are at approximate locations and will vary as we go through the back nine of the golf course. We have encountered city lines that are mis-located (no fault of the city) as we are positive they have been in the ground longer than you or I have been on this earth.

We are spending a million dollars on this project and it is very important that we get it right the first time. The mismanagement of tree placement years ago is now to some degree being corrected. You can drive around this course and still find hundred(s) of trees that should come out because they have out lived their existence.

Joe, I know you got upset but please understand as I mentioned we are not (because we can't afford it) just taking out trees for the sake of it!
In total we have removed less than 1% of the trees that are on this course. You have already planted more trees than the live trees we took out.

Hopefully we are done after these last few trees but please be patient and know that we are doing the best we can in trying to fix an issue that should have been done long ago.

Thank you,

Jim Musick
General Manager
Temple Terrace Golf & CC
813-988-1791 ext. 200
jmusick@templeterracegolf.com

**From:** Stephenson, Charles <CStephenson@templeterrace.com>
**Sent:** Thursday, October 8, 2020 12:35 PM
**To:** Jim Musick <jmusick@templeterracegolf.com>
**Cc:** LeBlanc, Ray <RLeBlanc@TempleTerrace.com>; Ross, Andrew <ARoss@Templeterrace.com>
**Subject:** FW: Golf Course Trees Bannockburn BenAvon Area

Jim
  Thought last week you told me we were done cutting trees.   I need to finish with this project.  Gonna need to start charging for time and materials from here on.  We have amassed a great amount of money thus far.    On another note we still need to have a plan to get caught up on past dues.

        Charles W. Stephenson
            City Manager
        City of Temple Terrace
            813-506-6413
cstephenson@templeterrace.com

**From:** LeBlanc, Ray <RLeBlanc@TempleTerrace.com>
**Sent:** Thursday, October 8, 2020 11:22 AM
**To:** Stephenson, Charles <CStephenson@templeterrace.com>
**Subject:** Golf Course Trees Bannockburn BenAvon Area

As of this morning 11:30, they are still cutting trees and stacking these up as shown in the pictures. We had previously cleaned all this area up of any trees that were cut. Thank you
Ray



*************************************************************************************
October 9, 2020

**From:** Stephenson, Charles <CStephenson@templeterrace.com>
**Sent:** Friday, October 9, 2020 11:26 AM
**To:** Ferris, Joseph <JFerris@Templeterrace.com>
**Subject:** FW: Golf Course Tree Removal

Joe
  Fyi see below questions and my response.

        Charles W. Stephenson
          City Manager
        City of Temple Terrace
          813-506-6413
cstephenson@templeterrace.com

**From:** Ross, Andrew <ARoss@Templeterrace.com>
**Sent:** Thursday, October 8, 2020 5:20 PM
**To:** Stephenson, Charles <CStephenson@templeterrace.com>
**Subject:** Re: Golf Course Tree Removal

Well-written, thank you.

Andy

---

**From:** Stephenson, Charles <CStephenson@templeterrace.com>
**Sent:** Thursday, October 8, 2020 4:57 PM
**To:** Donohue, Cheri <CDonohue@templeterrace.com>
**Cc:** City Council <TempleTerraceCityCouncil@templeterrace.com>; LeBlanc, Ray
<RLeBlanc@TempleTerrace.com>; jmusick@templeterracegolf.com <jmusick@templeterracegolf.com>;
Chambers, James <jchambers@templeterrace.com>
**Subject:** RE: Golf Course Tree Removal

Mr. Cureton
Thank you for your email.  Lets see if I can answer your questions.  If you have further concerns,  please
do not hesitate to contact me.

1.  The trees being removed along the golf course is a Temple Terrace Golf and Country Club
    project , not a City initiated one.   Tree removals according to current Florida Statute do not
    require direct involvement or approvals from government entities.  This Statute would include
    the Club's activities.  That being said, the City Arborist has been working directly with
    golf  course management to make sure that we are properly removing trees that require
    removal as a result of conflicts with the new irrigation system or are in fact identified as
    dead.  The conflicts with the irrigation system were expected and the City was aware that
    removals would need to be accomplished to some degree.  While attending to these conflicts,
    the Club decided, rightfully so, to remove dead trees at the same time.  Smart move for safety
    and future problems due to storm related issues.

2. The City Certified Arborist is working with the Club to ensure proper and sufficient removals. Care is being taken by both the City and the Club to remove only those trees that need to be removed.

3. There are no permits required by the City for the Club to perform these activities.

4. City Council approval is not required for tree removals. Council is aware that the project is underway and that we are indirectly providing assistance.

5. Tree and tree canopy rules have not changed locally but have at the State level as indicated above. The City understands that canopy would be diminished because of this tree removal project and has specifically agreed to work with the Club to replace trees in other locations in the case of conflicts, at a significant increase in ratio to regenerate the tree canopy. This effort is currently underway. The City Arborist is working with the management to locate new plantings as a part of this collaborative project with the Club.

6. The Club has contracted with a private company for tree cutting. The deal the City has offered the Club is that if they cut tree debris into manageable sizes, get it to the curb, we'll haul it. The City's efforts in the project are limited to the City bearing the cost of disposal using City equipment. By the City handling debris management, we are able to accomplish this with our equipment and manpower that the Club does not have. We have been hauling when we can so as to not affect regular schedules to our residents. With the City doing the debris removal it is a significant savings to the Club. The City is donating the funds for hauling and tipping fees.

7. There was no competitive bidding required. We are only utilizing our internal resources.

I hope this helps answers your concerns and questions.

1. Who at the City approved the tree removals ?
2. Who at the City is overseeing and monitoring the tree removal activities?
3. What City permits were obtained for the tree removal activities?
4. Was City Council Approval obtained for the tree removal activities?
5. Has the City changed their tree codes or policies as it applies to tree preservation?
6. Who is funding the tree removal activities and how is the City involved in the funding?
7. If the City was involved in the funding of the tree removal, did the City adhere to their competitive bidding process or was the work performed by one of the pre approved contractor's selected by the City for miscellaneous construction services?

Charles W. Stephenson
City Manager
City of Temple Terrace
813-506-6413
cstephenson@templeterrace.com

**From:** Donohue, Cheri <CDonohue@templeterrace.com>
**Sent:** Thursday, October 8, 2020 1:39 PM
**To:** Doug Cureton <curetondoug@yahoo.com>; Stephenson, Charles <CStephenson@templeterrace.com>
**Subject:** RE: Golf Course Tree Removal

Doug, I am passing this along to our City Manager who is not included in your email. You raise some questions I have not heard before. I am looking forward to hearing the answers too so I can answer myself with certainty. It is a huge project that was long overdue. New trees are being planted by the hundreds but it will be a long time before they will be the mature trees we've come to love and appreciate.
Thanks for asking.

*Cheri Donohue*


**From:** Doug Cureton
**Sent:** Thursday, October 8, 2020 1:29 PM
**To:** Ross, Andrew; Chambers, James; Chillura, Frank; Donohue, Cheri; Schisler, Gil
**Subject:** Golf Course Tree Removal

Dear Mayor and Council Members. My name its Doug Cureton and am a long term resident that resides at 401 Bannockburn Ave. Some of you know me. At this time, I would like to hear from each and all of you concerning the tree removal activities on the golf course. As I write this e-mail, they are removing two large live oaks on hole number 11 that were in good health and not in close proximity to the green or tee box.

I understand a new irrigation system is being installed on the course and that the tree removal was done under the pretense of providing additional sun light to the greens and tee boxes. Many of the trees that have been removed around the golf course do not fall under that justification for removal.

I would like to hear from you with regards to:

1. Who at the City approved the tree removals ?
2. Who at the City is overseeing and monitoring the tree removal activities?
3. What City permits were obtained for the tree removal activities?
4. Was City Council Approval obtained for the tree removal activities?
5. Has the City changed their tree codes or policies as it applies to tree preservation?
6. Who is funding the tree removal activities and how is the City involved in the funding?
7. If the City was involved in the funding of the tree removal, did the City adhere to their competitive bidding process or was the work performed by one of the pre approved contractor's selected by the City for miscellaneous construction services?

As a life long resident of Temple Terrace with family residing here from the very beginning of the City's creation in the 1920's I am acutely aware of the importance the City historically has placed on tree preservation. There is no question that the recent and ongoing tree removal activities on the golf course are totally inconsistent with the City's past tree preservation policies..

I would appreciate hearing from each of you soon.

Sincerely,

Doug Cureton
(813-767-3293)

**From:** Doug Cureton
**Sent:** Thursday, October 8, 2020 1:29 PM
**To:** Ross, Andrew; Chambers, James; Chillura, Frank; Donohue, Cheri; Schisler, Gil
**Subject:** Golf Course Tree Removal

Dear Mayor and Council Members. My name its Doug Cureton and am a long term resident that resides at 401 Bannockburn Ave. Some of you know me. At this time, I would like to hear from each and all of you concerning the tree removal activities on the golf course. As I write this e-mail, they are removing two large live oaks on hole number 11 that were in good health and not in close proximity to the green or tee box.

I understand a new irrigation system is being installed on the course and that the tree removal was done under the pretense of providing additional sun light to the greens and tee boxes. Many of the trees that have been removed around the golf course do not fall under that justification for removal.

I would like to hear from you with regards to:

1. Who at the City approved the tree removals ?
2. Who at the City is overseeing and monitoring the tree removal activities?
3. What City permits were obtained for the tree removal activities?
4. Was City Council Approval obtained for the tree removal activities?
5. Has the City changed their tree codes or policies as it applies to tree preservation?
6. Who is funding the tree removal activities and how is the City involved in the funding?
7. If the City was involved in the funding of the tree removal, did the City adhere to their competitive bidding process or was the work performed by one of the pre approved contractor's selected by the City for miscellaneous construction services?

As a life long resident of Temple Terrace with family residing here from the very beginning of the City's creation in the 1920's I am acutely aware of the importance the City historically has placed on tree preservation. There is no question that the recent and ongoing tree removal activities on the golf course are totally inconsistent with the City's past  tree preservation policies..

I would appreciate hearing from each of you soon.

Sincerely,

Doug Cureton
(813-767-3293)

----------------------------------------------------------------------------------------------------------------------------

On Monday, October 12, 2020, 02:55:36 PM EDT, Ross, Andrew <aross@templeterrace.com> wrote:

Mr. Cureton,

I know the answers to some of these questions but not all.  The city manager runs the day-to-day operations of the city, so he would be the one to have details about which trees were selected, the involvement of the arborist and questions about expenses incurred.

I do have some info about the tree regulations/laws though. You are correct that TT always had very strict tree ordinances that required approval of the city, a permit, replanting and other things in order to trim or remove certain species of trees.  Our entire ordinance was preempted

by the state legislature last year, however. It is now illegal for any local government to require approval or permits for any tree trimming or removal. So a property owner can now cut any trees they want and there is nothing the city can do about it anymore. We and other cities fought this in Tallahassee but we lost.

That said, I'm happy to meet with you or anyone else. As I said, the city manager would be the one who has some of the details you ask for, but I'm still happy to meet if I can be of any assistance.

Andy

Andy Ross
Acting Mayor
11250 North 56th Street
Temple Terrace, FL 33617
(813) 506-6440

---

**From:** Doug Cureton <curetondoug@yahoo.com>
**Sent:** Monday, October 12, 2020 12:38 PM
**To:** Ross, Andrew <ARoss@Templeterrace.com>
**Subject:** Re: Golf Course Tree Removal

Mayor Ross.

Thankyou for your response.

It is my understanding that the City still has a tree ordinance for the purpose of regulating tree removals within the City. I am not familiar with the state statute you are referring to and would like someone at the City to explain to me how it affects the City's tree regulations and how it makes the the golf course exempt from the City's tree regulations..

I know that over the years as a resident I have interacted with City staff on numerous occasions concerning tree removals on my property and on more than one occasion have been told by City staff that I was not allowed to remove a tree. I also am aware of developers within the City that have incurred significant expense to comply with the City's tree removal/preservation regulations.

Reading your response you give the impression that the City Arborist had extensive interaction with Country Club Management during this project. With regard to tree removals, It is my understanding that City staff had minimal involvement and only at the at the beginning of the project, by participating in a review of some trees on the south side of the course (I assume south of Bullard). It is my understanding that City staff was not; 1) involved in determining which trees made sense to be removed or 2) involved in any tree removal oversite.

I was recently informed that there was a list of trees to be removed that was provided to the City by Club Management. I was shown this list a couple of days ago and can tell you that trees have been removed that were not on this list. In fact, two large healthy oaks located on the east side of Hole # 11 were removed on Oct. 8, the date of my e-mail, and these trees were not on this list. Had there been City oversite, maybe these trees and other trees within the golf course could have been saved.

With regard to the dead and unhealthy trees on the golf course, some have been removed but there are many still standing. These trees need to be removed as soon as possible. Some of the pines are infected with the pine beetle and pose a threat to other healthy pine trees in the general area.

With regard to the City incurring the cost for picking up and hauling away the cut trees, the City should be tracking the manhour and equipment cost associated with this contribution. I am sure it will be hundreds of hours at a significant cost and City residents deserve to know what this cost is.

At this time I would appreciate a meeting with you, any Council Members that may want to attend and any staff you feel appropriate.

I look forward to meeting with everyone.

Thankyou'

Doug Cureton

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

K & W PROPERTY GROUP, LLC, a Florida
limited liability company,

      Plaintiff,                            CASE NO:

  v.

CITY OF TEMPLE TERRACE, a political
subdivision of the State of Florida,

      Defendant.
_____/


# *EXHIBIT "F"*

**(TO COMPLAINT)**
**(Declaratory, Injunctive, and Other Relief Requested)**

Mr. Jimmy D. Crawford, Esq.
Ms. Stephanie M. Modica, Esq.
Ms. Lindsay C. T. Holt, Esq.
Ms. Freya L. McLain, Esq.
Mr. Matthew D. Black, Esq.

## Crawford, Modica & Holt
CHARTERED ATTORNEYS AT LAW
———— CMH LAWYERS ————

November 16, 2022

*VIA FEDEX DELIVERY and Electronically to: cmooney@templeterrace.com*

Cheryl Mooney, City Clerk
City of Temple Terrace, Florida
11250 North 56th Street
Temple Terrace, Florida 33617

Re:     Code Enforcement Case 21-0256
        K&W Property Group, LLC

Dear Clerk Mooney:

As you know, this law firm represents K&W Property Group LLC, (hereafter "K&W"). K&W is the owner of certain residential real property located within the City that was subject to a Code Enforcement Case No. 21-0256. This correspondence is a formal Request for Reduction and Settlement of Fine in Case No. 21-0256, pursuant to City Code Section 1-72(h), and Section 162.09(2)(c), Florida Statutes. A Memorandum attached hereto as Exhibit "A" provides K&W's argument that the fine assessed by the Order in this case should be completely eliminated.

The Temple Terrace Code of Ordinances, Section 1-72(h)(1), states "[t]he reduction and settlement of MCEB or special magistrate liens is delegated to the city's legal department." Code Section 1-72(h)(2) states "[a]pplications for lien reductions and settlements shall be submitted to the city clerk's office for transmittal to the legal department." Please forward this request to City Attorney Pam Cichon for further action.

However, no lien has been filed in this case. Therefore, arguably Code Section 1-72 does not apply, as Code Section 1-72 does not address the reduction and settlement of fines. Section 162.09(2)(c), F.S., does, providing that "[a]n enforcement board may reduce a fine imposed pursuant to this section."

Therefore, we further request that this item be placed on the next available agenda for a hearing before the Municipal Code Enforcement Board of the City of Temple Terrace, Florida. We will appear at such hearing to present our case before the MCEB.

Cheryl Mooney, City Clerk
City of Temple Terrace, Florida
Request for MCEB Fine Settlement
November 16, 2022

_____

     If you have any question or need any additional information, please contact our office. Thank you for your assistance in this matter.

CRAWFORD, MODICA & HOLT,
CHARTERED ATTORNEYS AT LAW

Jimmy D. Crawford, Esq.

Attachment

c (electronic):

Client

Pam Cichon, Esquire
City Attorney

Kristin Garcia
Deputy City Clerk

Lindsay C. T. Holt, Esquire

**MEMORANDUM IN SUPPORT OF FINE SETTLEMENT/ELIMINATION
TEMPLE TERRACE MCEB CASE NO. 21-0256
K&W PROPERTY GROUP, LLC**

COMES NOW, K&W Property Group, LLC ("K&W"), by and through its undersigned attorneys, and requests elimination of the fine imposed by MCEB Order in Case No. 21-0256, and in support thereof, states as follows:

## I.    HEARING FACTS, REVIEW OF MINUTES

1. K&W was cited by the City of Temple Terrace, Florida ("City") for cutting trees without a permit from the City upon property owned by K&W identified as Folio No. 038104.0105 ("Property").

2. K&W defended such allegation on the basis of state preemption/exemption from City permit requirements pursuant to Section 163.045(1), Florida Statutes, as it was in effect of the dates the trees were removed.

3. In pertinent part, at the February 10, 2021 MCEB hearing in this case ("Hearing"), City Attorney Pam Cichon stated the City's case as:

> The City's evidence will show that the statute was not complied with. The documentation provided by the property owner to the City's arborist doesn't address the property in question and that it doesn't adequately address what occurred on the subject property. The City will also contend that the Florida Statute doesn't apply to this particular property at all.  February 10, 2021 MCEB Minutes, Pages 4-5 ("Minutes"). (A copy of the Minutes is *attached hereto as Exhibit "1"* and incorporated herein by reference).

4. During the Hearing it was established that the Property has Multifamily/RF zoning and R-9 land use, which provide for residential use as allowed on the Property.  *See* Minutes at Pages 7-8.

5. During the Hearing it was established that an arborist certified by the International Society of Arborists inspected the trees on the Property on October 19, 2020, finding 15 trees in good condition not posing a danger to persons or property, and 28 trees in poor condition, posing a danger to persons or property.  This was established by two documents signed by Edward O'Brien, ISA Certified Arborist, Respondent's Exhibits 2 and 4, which were admitted into the record and unrebutted.  *See* Minutes at Page 16.  *See also* Case File at Pages 36, 38-39, a copy of which is *attached hereto as Exhibit "2"* and incorporated herein by reference.

6. During the Hearing, City Attorney Chicon and City Board Members questioned the address on Respondent's Exhibit 4, 8903 N. 78th Street, as it appeared that such address was not assigned until January of 2020. David Singer, the attorney representing K&W at the Hearing, responded that the affidavit (Respondent's Exhibit 4) was prepared after the fact in preparation for the Hearing, and the initial letter (Respondent's Exhibit 2) was prepared prior to the trees being removed. *See* Minutes at Page 17.

7. Board Member Buckley stated it is his determination that the Board is to opine local law and not state law. He said he is not qualified to opine all of state law. *See* Minutes at Page 19.

8. Board Member Snelling said his main problem [was] with the validity and authenticity of the arborist report. *See* Minutes at Page 20.

9. City Attorney Chicon stated that common sense regardless of this statute must still be used in considering this case. *See* Minutes at Page 17.

10. Board Attorney Martin stated that as of the Hearing date, Florida courts had not rendered a decision interpreting Section 164.045, F.S. *See* Minutes at Page 19.

## II.    APPLICABLE LAW

11. As noted by Board Attorney Martin, as of the Hearing date of February 10, 2021, no Florida appellate court had issued a ruling regarding Section 163.045, F.S. However, an Escambia County circuit court had issued a decision interpreting Section 163.045, F.S., and City Attorney Chicon cited such circuit court opinion in justifying the City's action in prosecuting K&W. In an email communication between the Mayor, the City Attorney, and then-City Manager Charles Stephenson, Attorney Chicon writes "… the City of Pensacola fought this in court re: cutting on an empty lot and won. Our City demands a proper documentation, not just any old report from an arborist will do." A copy of the email is ***attached hereto as Exhibit "3"*** and incorporated herein by reference.

12. While not binding on the Hearing or the case, there was at that time a circuit court opinion from Escambia County upholding a fine for a claimed 163.045 F.S. tree-cutting exemption in which the circuit court held that the City could challenge the arborist report, which examined a tree on a vacant residential lot upon which the owners wished to build a home. The owner's arborist report stated the tree would be a danger to the home once it was built. The Escambia circuit court held that "section 163.045(1) does not preempt the City from challenging, through submission of its own expert opinions, the conclusions reached by an arborist who generated questionable documentation that [the tree] is dangerous." *Vickery v. City of Pensacola,* 342 So. 3d 249, 252 (Fla. 1st DCA 2022).

13. After the MCEB entered its Order in the K&W case, the *Vickery* case was heard on appeal by the 1st District Court of Appeal, which issued its opinion on February 16, 2022. A copy of the opinion is ***attached hereto as Exhibit "4"*** and incorporated herein by reference.

14. District Courts of Appeal opinions are binding on *all* lower tribunals in the State of Florida in the absence of a conflicting opinion. See e.g. *Link v. State of Florida,* 273 So. 3d 1115 (3d DCA 2019), citing *Pardo v. State*, 595 So. 2d 665, 666 (Fla. 1992). Because there is no conflicting District Court of Appeal decision, *Vickery* as decided by the First District Court of Appeal, is the law of the land in Florida, and is binding on the City.

15. The *Vickery* District Court of Appeal held that:

   a. The City could not challenge the content or conclusions of the arborist letter, stating that Section 163.045(1) "… does not empower a local government to challenge the sufficiency of the documentation either before or after tree removal. *Vickery* at 254.

   b. "Danger" as used in the statute refers to "risk of harm." *Id.*

      i. The original arborist letter in the K&W case stated that the trees would "pose a hazardous risk to a newly built home." Respondent's Exhibit 2.

   c. All residentially zoned properties are "residential" for purposes of Section 163.045, F.S., whether or not a residence currently exists. *Id.* at 255.

   d. The fact that the arborist letter was written about a tree on a vacant lot, and opined only that the tree would be a danger to a future home that was built on the lot, did not remove the case from the exemption provided by Section 163.045(1), F.S. *Id.* The legislature clearly and unequivocally exempted tree removal from local government interference of any kind when an owner receives documentation from a certified arborist that the tree(s) present a danger to persons or property.[1] *Id.* at 256.

### III.  UNEQUAL DISCRIMINATORY APPLICATION OF SECTION 163.045 BY THE CITY

16. In the Fall of 2020, the City was dealing with another tree-cutting controversy, over the Temple Terrace Golf and Country Club property, which without any permit from the City, cut hundreds of trees, including large, healthy live oak trees, as part of an irrigation upgrade project on the golf course.

---

[1] It is important to note that nowhere in Section 163.045(1), F.S. is the documentation required to be obtained by the owner *before* removing the tree. It is only required that documentation be obtained.

17. After citizens complained and questioned the tree removal on the golf course, the highest authorities in the City, then-City Manager Charles Stephenson and Mayor Andrew Ross, responded in writing.  Mayor Ross stated in an email to a concerned citizen:

> I do have some info about the tree regulations/laws though. You are correct that TT always had very strict tree ordinances that required approval of the city, a permit, replanting and other things in order to trim or remove certain species of trees.  Our entire ordinance was preempted by the state legislature last year, however.  It is now illegal for any local government to require approval or permits for any tree trimming or removal.  So a property owner can now cut any trees they want and there is nothing the city can do about it anymore.  We and other cities fought this in Tallahassee but we lost. (Emphasis added).

A copy of the email is ***attached hereto as Exhibit "5"*** and incorporated herein by reference.

18. Responding to the same concerned citizen, City Manager Stephenson stated in an October 8, 2020 email (less than three months before the City cited K&W for cutting trees):

> The trees being removed along the golf course is a Temple Terrace Golf and Country Club project, not a City initiated one.  Tree removals according to current Florida Statute do not require direct involvement or approvals from government entities.  This Statute would include the Club's activities.

A copy of the email is ***attached hereto as Exhibit "6"*** and incorporated herein by reference.

19. To summarize, within ninety (90) days of citing K&W for illegally removing trees without a City permit, the City Manager and the Mayor publicly stated in writing that the City can do nothing about tree cutting because the State of Florida has preempted such permitting by adopting Section 163.45, F.S.

20. In fact, the statements are even more egregious since the golf course property is demonstrably nonresidential, as it does not have residential zoning *or* actual residential use.  Therefore, tree cutting on the golf course property cannot be exempted by Section 163.45, F.S., and the City either knew or should have known the same.

21. City Manager Stephenson replied further in the October 8, 2020 email (Exh. 6):

> [T]he City Arborist has been working directly with golf course management to make sure that we are properly removing trees that require removal as a result of conflicts with the new irrigation system or are in fact identified as dead.

22. However, further review shows this statement is false. City Arborist Joseph Ferris wrote in an August 6, 2020 email to the golf course manager:

> Why are there so many healthy Live Oaks coming down, I've received phone calls and emails as well as residence asking while evaluating the trees on their property?

23. So, two (2) days before City Manager Stephenson states in writing that the City Arborist "has been working directly with the golf course" to ensure all trees require removal or are dead, the City Arborist writes to the golf course questioning "why so many healthy Live Oaks [are] coming down."

24. The picture becomes clearer upon a review of City Manager Stephenson's August 7, 2020 email to City Arborist Ferris suggesting:

> Lets [sic] post something on line about the golf course project and the new law about no permits needed to take trees down on private property.

25. In summary, at virtually the same time period in which the City's highest authorities were shouting from the rooftops "we are preempted by the state, we can't do anything about anyone cutting trees" they were simultaneously citing and prosecuting K&W, owned by two men of Middle Eastern/North African descent, for <u>exactly the same alleged violation</u> that the City fell all over itself trying to excuse on the golf course – property undeniably nonresidential, and in fact owned by the City.

26. We understand this duplicity by the City may not figure directly into the MCEB's decision to rescind and eliminate the $130,000.00 fine wrongly decided against K&W's interest, however, we believe it is important because (1) selective prosecution is a valid defense to code enforcement actions, and (2) K&W wishes to avoid costly and damaging litigation regarding the unequal treatment of K&W by the City under the law. *See Young Apartments, Inc. v. Town of Jupiter, FL*, 529 F.3d 1027, 1045 (11th Circuit 2008), where the Court allowed a suit to proceed against the Town of Jupiter <u>and</u> Jupiter's officials in their individual capacity, based on claims of unequal treatment of Hispanic individuals. Certainly, K&W has been treated by the City as a "class of one" and have incurred significant damages. All of those damages cannot be cured by rescission of the $130,000 fine assessed by the MCEB, but it is the right place to begin.

## IV.    CONCLUSION

27. The MCEB's two points of law and fact relied upon to find the Property in violation were (1) the Property cannot be "residential" because it was vacant, and (2) the Board did not 'believe' the arborist letter and affidavit (*See* Minutes at Page 18). While an arguably valid

position on the Hearing date, <u>both points</u> have since been decided against the MCEB's position by binding Appellate Court precedent.

28. K&W has been intentionally treated differently and discriminatorily by the City.

29. The version of Section 163.045, F.S. that was in effect for the K&W case has since been amended by the Florida Legislature to be more 'government friendly', presumably in recognition of the complete exclusion of local governments, and in fact, the courts[2], in regulating tree removal exemptions pursuant to Section 163.045, F.S.

WHEREFORE, under the binding precedent of *Vickery v. City of Pensacola,* 342 So. 3d 249 (Fla. 1st DCA 2022), which holds that vacant, residentially zoned property is "residential" for purposes of Section 163.045, F.S., and that a local government is without authority to challenge any aspect of a certified  arborist's documentation that a tree presents a danger to persons or property, and because K&W Property Group, LLC, has been treated discriminatorily by the City of Temple Terrace, Florida, the fine imposed by the MCEB is not supported by law and should be eliminated in its entirety.

Respectfully submitted on this  16th day of November.

CRAWFORD, MODICA & HOLT,
CHARTERED ATTORNEYS AT LAW

*/s/ Jimmy D. Crawford*_____
**Jimmy D. Crawford**
FL Bar No. 38441
**Lindsay C. T. Holt**
FL Bar No. 0041179
702 W. Montrose Street
Clermont, FL 34711
Telephone:  352/432-8644
jcrawford@cmhlawyers.com
lholt@cmhlawers.com
service@cmhlawyers.com
*Attorneys for Defendants*

---

[2] *Vickery* at 256, 259, holding that Section 163.045, F.S., authorizes no court oversight or remedy.