# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

K&W  PROPERTY GROUP, LLC,

     Plaintiff,

v.                                   Case No: 8:23-cv-1304-CEH-TGW

CITY OF TEMPLE TERRACE,

     Defendant.

_____

## <u>ORDER</u>

This equal protection matter comes before the Court on Defendant the City of Temple Terrace's[1] Motion to Dismiss for Failure to State a Claim, to which Plaintiff K&W Property Group, LLC responds in opposition. Docs. 20, 22. At the root of this matter is a dispute over Temple Terrace's enforcement of a tree-removal ordinance against Plaintiff. *See* Doc. 17.

Upon close review and consideration, and being fully advised in the premises, the Court will grant the motion and dismiss the Amended Complaint without prejudice.

---

[1] Defendant is subsequently referred to as "Temple Terrace" or "the City."

I. **Background**[2]

*Enforcement Proceeding*

Plaintiff K&W Property Group, LLC, ("K&W") is a Florida limited liability corporation that owns property in Temple Terrace, Florida. Doc. 17 ¶¶ 3–6. The property at issue here is zoned as residential multi-family with a land use classification of residential. *Id.* ¶¶ 12–13. At some point in time, Plaintiff hired a certified arborist to survey trees on the property, who provided a letter stating that certain trees were a danger to persons or property. *Id.* ¶ 9. Plaintiff does not dispute that twenty-six trees were removed, including eleven "grand trees" as defined by local law. *Id.* at 15, 29.[3]

The operative complaint and briefing of this motion makes frequent reference to two laws: the City's tree-removal ordinance and a Florida state law preempting local regulation of tree removal in certain circumstances.

The applicable local ordinance, which regulates tree trimming and removal in Temple Terrace, can be found in Temple Terrace's City Code, Division 8. Doc. 17 ¶

---

[2] When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court derives the statement of facts from the factual allegations of the complaint and attached exhibits, which the Court must accept as true in ruling on the motion. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). *See Gill as Next Friend of K.C.R. v. Judd,* 941 F.3d 504, 511 (11th Cir. 2019) ("The Civil Rules provide that an attachment to a complaint generally becomes 'part of the pleading for all purposes,' Fed. R. Civ. P. 10(c), including for ruling on a motion to dismiss.").

[3] Plaintiff does not specify the date that the arborist certification was provided or when the trees were removed, issues that were material in the Code Enforcement Board proceeding. According to the Board's findings, which Plaintiff attaches, the Board found that the trees were removed at some time prior to December 11, 2020. Doc. 17 at 29.

5, Doc. 17 at 11–23. It forbids removal of certain "protected" trees, including grand trees, unless a property-owner first obtains a permit from the city. *Id.* at 15. The ordinance also sets out a mechanism for calculating penalties for improper removal and includes sections on appeals, regulations, standards, and a list of exempt invasive trees. *Id.* at 11–23.

Plaintiff does not dispute that the trees were removed, but alleges that it did so in compliance with state law that preempted the City's ordinance.  Specifically, Plaintiff asserts that it obtained and provided the city with documentation from an arborist indicating that the trees in question were a danger to persons or property, and that Temple Terrace, therefore, could not require it to apply for a permit. Doc. 17 ¶ 9; *See* § 163.045 (1), Fla. Stat.  At the time of removal and enforcement, a Florida state statute provided that: "[a] local government may not require a . . . permit . . . for the . . . removal of a tree on residential property if the property owner obtains documentation from an arborist certified by the International Society of Arboriculture or a Florida licensed landscape architect."  Fla. Stat. § 163.045 (1) (2019).[4]

_____

[4] The statute, as modified on July 1, 2022, contains the same substantive provision forbidding local governments from requiring residential property owners to obtain a permit to cut down trees under certain circumstances. *See* Fla. Stat. § 163.045 (1) (2022). The revised statute defines "documentation" as requiring "an onsite assessment performed in accordance with the tree risk assessment procedures outlined in Best Management Practices--Tree Risk Assessment, Second Edition (2017) by an arborist certified by the International Society of Arboriculture (ISA) or a Florida licensed landscape architect and signed by the certified arborist or licensed landscape architect." It defines "residential property" to mean "a single-family, detached building located on a lot that is actively used for single-family residential purposes and that is either a conforming use or a legally recognized

3

Temple Terrace issued an initial Notice of Violation to K&W on January 15, 2021, for improper removal of twenty-six trees. Doc. 17 ¶ 7; Doc. 17 at 25. The City issued an amended "Notice of Violation & Notice of Hearing Irreparable/Irreversible Violations" on February 4, changing the listed date of inspection and noticing a Municipal Code Enforcement Board hearing. Doc. 17 ¶ 8, Doc. 17 at 27.

On February 15, Temple Terrace's Code Enforcement Board heard testimony from City witnesses and argument from counsel for each side, ultimately finding K&W in violation of the ordinance and imposing a $130,000 fine. Doc. 17 ¶ 10; Doc. 17 at 29–30.

The Code Enforcement Board issued an Order including several findings. Doc. 17 at 29–30. First, it noted that Plaintiff's vacant wooded property had no address until January 12, 2021, when the City assigned the property an address of 8903 N. 78th Street. *Id.* at 29. It found that prior to December 11, 2020, Plaintiff had removed 26 trees, including 11 grand trees, without obtaining a permit. *Id.* Subsequently, Plaintiff provided the city with a letter from a certified arborist (dated October 26, 2020) referencing trees on a parcel of land at a different address. *Id.* Then, just before the hearing, Plaintiff provided another letter from the same arborist (dated October 19, 2020) noting the condition of 28 trees at the correct address, 8903 N. 78th Street. *Id.*

---

nonconforming use in accordance with the local jurisdiction's applicable land development regulations." *Id.*

4

However, the Code Enforcement Board concluded that because Plaintiff's property had not yet been assigned an address on October 19, 2020, the arborist could not possibly have provided his documentation to Plaintiff then. *Id.* It found that Respondent's removal of trees thus violated three sections of the City of Temple Terrace Code: 12-768(a)(1) – Tree Unlawful Removal; 12-768(a)(2) – Tree Removal Standards, and 12-768(b) – Tree removal in Development. *Id.* at 30. The Board assessed a fine of $5,000 per violation against Plaintiff for a total fine of $130,000. *Id.* The Order noted that Plaintiff could appeal to the Circuit Court for the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, within thirty days. *Id.*

*Plaintiff's Proposed Comparator Property*

Plaintiff alleges that just months before Temple Terrace initiated an enforcement action against it, the City handled tree-removal on City property rather differently. *Id.* at 8 ¶ 30. That particular property (the "Golf Course") is zoned as PRS-Preservation and carries a city-designated land use classification of "District Park." *Id.* at 5 ¶ 17. Plaintiff alleges that emails obtained through public records requests show that the City "unequivocally absolved itself from responsibility for the unpermitted cutting of over sixty healthy trees on non-residential property owned by the City." *Id.* at 7 ¶ 24. In the emails, city officials, including Temple Terrace's Acting Mayor and City Manager, assuaged concerns of residents regarding tree-removal on the Golf Course by stating that the City's ordinance had been completely pre-empted by state law. *Id.* ¶¶ 21–23.

The most relevant emails begin in August 2020, when a city employee asked the City Manager why so many healthy Live Oaks had been removed from the Golf Course, noting that he had received concerned phone calls and emails, in addition to questions from residents about their own properties. *Id.* at 32. City officials proceeded to discuss potential responses to concerns about the Golf Course project and whether citizens should be informed of the state law pre-empting local ordinances. *Id.* at 33–34. The City Manager, for example, suggested posting information on social media regarding the new state statute and the fact that "no permits [are] needed to take down trees on private property." *Id.* at 33.

The second batch of emails starts off with a citizen expressing concern about the very same "tree removal activities" on the Golf Course. *Id.* at 40. He asked seven questions of Temple Terrace officials regarding approval, permitting, oversight, and funding of the tree removal. *Id.* Acting Mayor Andy Ross responded by stating, in part, that Temple Terrace's "entire ordinance was preempted by the state legislature," and that it was "now illegal for any local government to require approval or permits for any tree trimming or removal." *Id.* at 40–41. Ross added that "a property owner can now cut any trees they want and there is nothing the city can do about it anymore." *Id.* at 41.

*Claims and Procedural Posture*

Plaintiff alleges that Temple Terrace selectively and punitively enforced its tree removal ordinance in violation of the Equal Protection Clause of the Fourteenth

Amendment and 42 U.S.C. § 1983. *See* Doc. 17. [5] It alleges that the Golf Course was a similarly situated property the City treated differently by removing at least sixty-four trees on the course without a permit and not enforcing its ordinance. *Id.* at 4. According to Plaintiff, the official emails show that the City excused tree removal on the Golf Course under the guise of adhering to Florida state law, not long before prosecuting and fining K&W. *Id.* at 5–7. In addition, Plaintiff alleges that Temple Terrace refused its request to eliminate the $130,000 fine and did not allow it to present its request at a public hearing, ultimately filing a lawsuit in Florida state court to foreclose on the K&W Property. *Id.* at 7 ¶¶ 26–27.

Plaintiff seeks various forms of relief, including a preliminary and permanent injunction, a declaratory judgment declaring unconstitutional Defendant's prosecution of K&W, compensatory damages, and attorneys' fees. *Id.* at 9–10.

Defendant moves to dismiss Plaintiff's Amended Complaint for lack of subject-matter jurisdiction, failure to state a claim, and because, it argues, this suit is an improper collateral attack on the Code Enforcement Board's findings and order. *See* Doc. 20. Plaintiff responds in opposition. *See* Doc. 22.

## II.    Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief."

---

[5] As referenced *supra*, the Amended Complaint includes as exhibits Temple Terrace's tree-removal ordinance (Doc. 17 at 11–23), the City's Notices of Violations (*Id.* at 24–27), the City's Order following the city's Code Enforcement Board hearing (*Id.* at 28–30), emails between the Acting Mayor, City Manager, and residents (*Id.* at 31–42), and minutes from the Code Enforcement Board Hearing (*Id.* at 43–51).

*Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009), quoting Fed. R. Civ. P. 8(a)(2).  Labels, conclusions, and formulaic recitations of the elements of a cause of action are not sufficient.  *Id.*, citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Furthermore, mere naked assertions are not sufficient. *Id.*  A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.*, quoting *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). However, the Court is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.*

## III.    Discussion

Temple Terrace first argues that the Court should abstain from hearing this case under the *Younger* abstention doctrine in light of a parallel state foreclosure case. Next, it argues that Plaintiff should be required to provide a more definite statement of its claims, as it fails to state which type of equal protection claim it brings. Additionally, Temple Terrace argues that Plaintiff fails to state a claim based on its failure to meet the threshold requirement of alleging an adequate comparator, its failure to allege intentional discrimination, and because this suit is an impermissible collateral attack against the Code Enforcement Board's order.

In support of its argument that Plaintiff has not proposed an adequate comparator, the City argues that the K&W property and the Golf Course are zoned differently, have distinct land use classifications, and are thus not similarly situated.

Beyond that, Temple Terrace emphasizes that the Golf Course is owned and controlled by the City, while Plaintiff's property is not. Temple Terrace also argues that Plaintiff has not plausibly alleged intentional discrimination or lack of a rational basis for enforcing the ordinance.

Plaintiff disagrees, first stating that it removed the trees in compliance with applicable (and overriding) state law. It argues that the City nevertheless selectively and discriminatorily enforced its tree ordinance. And Plaintiff defends its proposed comparator – the Golf Course – as similarly situated, arguing that emails show that the City considered the properties similarly situated in responding to citizen complaints. Plaintiff also argues that Temple Terrace's *Younger* arguments, request for a more definite statement, and "impermissible collateral attack" arguments should be rejected.

After careful review, the Court will grant Temple Terrace's motion to dismiss, without prejudice. First things first, Defendant's argument for *Younger* abstention and dismissal based on a theory of impermissible collateral attack are unpersuasive. And Plaintiff need not provide a more definite statement. But the Amended Complaint nevertheless fails to state a claim. The Golf Course is not a suitable comparator because it is City-owned, not privately-owned, it is zoned as a district park, not residential property, and it was a developed golf course at the relevant time, rather than vacant wooded land. Therefore, the two properties can be reasonably distinguished and are not similarly situated under the applicable legal standard. Even if they were similarly situated, Plaintiff fails to plausibly plead intentional

9

discrimination, which it must for a traditional selective enforcement claim. Because Plaintiff has failed to plead the elements of either theory of its claim, the Court will dismiss the Amended Complaint, with leave to amend.

### A. Defendant fails to establish the exceptional circumstances *Younger* demands.

Temple Terrace argues that the Court should abstain from exercising jurisdiction over this case under *Younger v. Harris*, 401 U.S. 37 (1971). Doc. 20 at 7–8. It asserts that Plaintiff "affirmatively alleges the existence of a pending state judicial proceeding to foreclose the lien resulting from the allegedly improperly fine, (¶ 27), compelling *Younger* abstention if the *Middlesex*[6] factors are satisfied." *Id.* at 7–8 (footnote omitted). The City argues that all three relevant factors are satisfied here. *Id.* at 8–9.

Plaintiff disagrees, arguing that Temple Terrace skipped ahead to the *Middlesex* factors before arguing the threshold issue of whether the parallel case falls into one of the three exceptional categories set out in caselaw. Doc. 22 at 3. Plaintiff argues that the relevant proceeding here is neither a criminal proceeding, a state civil proceeding akin to criminal prosecution, or a proceeding that implicates a state's interest in

---

[6] In *Middlesex County Ethics Committee v. Garden State Bar Association,* 457 U.S. 423 (1982), where an attorney challenged the constitutionality of ongoing state attorney disciplinary proceedings, the Supreme Court explained that "[t]he policies underlying Younger are fully applicable to noncriminal judicial proceedings when important state interests are involved," such as the state bar disciplinary proceedings at issue. *Id.* at 432–434. Applying *Middlesex,* federal courts in subsequent cases consider what are called the three "*Middlesex* factors" in deciding whether to abstain: whether there is an "(1) ongoing state judicial proceeding, which (2) implicates important state interests, and (3) provides an adequate opportunity to raise federal challenges." *Sprint Communications v. Jacobs,* 571 U.S. 69, 81 (2013) (internal citations and quotations omitted).

enforcing the orders and judgments of its courts. *Id.* at 3–5. Because the underlying state court suit simply concerns foreclosure of a lien (and does not fall into any of the three relevant categories), Plaintiff contends that Defendant's request for abstention fails from the start. *Id.* at 5–6. Even if one of the three types of cases were implicated here, Plaintiff argues that an equitable exception to *Younger* would apply based on the City's bad faith during the enforcement proceeding. *Id.* at 6–7.

Temple Terrace indeed fails to address the threshold issue for *Younger* abstention—whether the pending state judicial proceeding falls into one of the three exceptional types of proceedings warranting abstention. Because this threshold requirement has not been satisfied, the Court agrees that it need not reach the *Middlesex* factors and should not abstain here.

The *Younger* Abstention doctrine prohibits federal courts from interfering with three "exceptional" categories of state proceedings: (1) criminal prosecutions; (2) civil proceedings akin to criminal prosecutions; and (3) "civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Commc'ns., Inc. v. Jacobs,* 571 U.S. 69, 73 (2013); *see also Leonard v. Alabama State Bd. of Pharmacy,* 61 F.4th 902, 907–908 (11th Cir. 2023).[7] Where a court determines that a state proceeding falls into one of these exceptional categories, the court then considers the *Middlesex* factors before deciding whether to

---

[7] As the Supreme Court noted in *Sprint Communications*, this third category captures cases that "touch on a state court's ability to perform its judicial function," such as orders of contempt and the posting of bond pending appeal. 571 U.S. at 78.

abstain. *Barone v. Wells Fargo Bank,* N.A., 709 F. App'x 943, 948 (11th Cir. 2017) (citing *Sprint Communications,* 571 U.S. at 81).

Here, Temple Terrace leaps ahead to the *Middlesex* factors without addressing the necessary threshold inquiry. *See* Doc. 20 at 6–9. A state court foreclosure action does not clearly fall into one of the exceptional categories covered by the *Younger* doctrine. *See Barone,* 709 F. App'x at 949; *Gibson v. Fla.,* No. 8:22-CV-2247-WFJ-TGW, 2022 WL 17608447, at *2 (M.D. Fla. Dec. 13, 2022). And Temple Terrace's reliance on trial court and out-of-circuit decisions in which courts did abstain based on pending foreclosure suits is unconvincing, as each of those decisions was issued before the Supreme Court's decision in *Sprint Communications*, which clarified and elaborated on the three exceptional circumstances under which abstention is necessary. 571 U.S. 69, 78 (2013); *see also Agomuoh v. PNC Fin. Servs. Grp.*, No. GJH-16-1939, 2017 WL 657428, at *5 (D. Md. Feb. 16, 2017) ("Defendants' cited cases are thus inapposite because they are either pre-*Sprint* and/or cases in which the Plaintiff sought injunctive relief.") Ultimately, the "exceptional circumstances" requiring abstention under *Younger* are not present here.

**B. The City's request for a more definite statement will be granted.**

Temple Terrace next asks that the Court order Plaintiff to provide a more definite statement, arguing that Plaintiff's sole count includes language alleging two distinct equal protection claims. Doc. 20 at 9–12. It argues that Plaintiff includes some allegations suggesting that it seeks to bring a selective enforcement equal

protection claim, and other language that matches the standard for "class of one" claims. *Id.* at 10. Temple Terrace argues that Plaintiff should clarify which type of claim it brings—an issue that is "more than academic" because it will determine which evidence is relevant and what lines of inquiry are to be pursued in discovery. *Id.* at 11. Therefore, it asks the Court to order Plaintiff to either delete the language related to a selective enforcement claim or state its claims in separate counts. *Id.* at 12.

Plaintiff disagrees. Doc. 22 at 8–9. In its view, Temple Terrace wrongly argues for a more definite statement just because the Amended Complaint brings two theories of an equal protection claim. *Id.* at 8. Plaintiff also points out that Temple Terrace capably attacks the merits of both theories in the instant motion to dismiss. *Id.* Finally, Plaintiff argues that the Amended Complaint is not so vague or ambiguous that Temple Terrace was unable to prepare a response, and that because such motions are disfavored under the law, the motion should be denied here. *Id.*

Federal Rule of Civil Procedure 12(e) allows a party to move for a more definite statement if "a pleading to which a responsive pleading is allowed . . . is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Rule 8(a)(2) requires that a pleading contain a "short and plain statement of the claim" that shows that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). Rule 10(b) requires a party to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed.

R. Civ. P. 10(b); *Sawyers v. Coastal QSR Holdings, LLC,* No. 8:23-CV-1862-CEH-SPF, 2024 WL 2293249, at *3 (M.D. Fla. May 21, 2024).

Temple Terrace is correct that the Amended Complaint violates Rule 10(b). A complaint that commits the sin of not separating into a different count each cause of action or claim for relief is a shotgun pleading that must be dismissed and repleaded. *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1322-23 (11th Cir. 2015); *see also Ledford v. Peeples*, 657 F.3d 1222, 1239 (11th Cir. 2011) (noting that shotgun pleadings lump claims together in one count); *Kennedy v. Bell S. Telecomm., Inc.* (AT&T), 546 F. App'x 817, 818, 820 (11th Cir. 2013) (recognizing a "one-claim-per-count rule" under Fed. R. Civ. P.10(b)). Although the Amended Complaint (Doc. 17) is not so vague or ambiguous that Defendant cannot reasonably prepare a response, it improperly mixes two distinct claims for relief: selective enforcement equal protection and "class of one" equal protection in one count of the Amended Complaint. Plaintiff will be given an opportunity to replead these claims, if it so chooses.

### C. Temple Terrace fails to show that the Amended Complaint should be dismissed as an "impermissible collateral attack" on the Code Enforcement Board's Order.

The Court next turns to an argument Defendant makes at the very end of its motion—that the Amended Complaint should be dismissed as an "impermissible collateral attack" on the Code Enforcement Board's findings and order. Doc. 20 at 21–25. Temple Terrace argues that this suit is "an ill-disguised attempt" to dispute the Code Enforcement Board's conclusion that K&W did not obtain sufficient

documentation from an arborist before removing trees from its property (and the Board's interpretation that the statute requires an owner to have the required documentation *before* removing trees). *Id.* at 22. It pivots to argue that Plaintiff could have raised their equal protection claims in the circuit court appeal of the Board's order, but chose not to do so, thereby abandoning any further right to an appeal.[8] *Id.* at 23–24. Consequently, having abandoned its appeal of the Code Enforcement Board order, the City argues that K&W cannot contest its findings in this action. *Id.* at 24.

Lastly, the City argues that—to prevail on its selective enforcement claim(s)—Plaintiff must effectively "overturn" the Code Enforcement Board's conclusion that Florida law requires a property owner to obtain the required documentation before tree removal, and its factual conclusion that K&W created its documentation after tree removal. *Id.* at 25. The City also asserts that because the legal and factual findings of that proceeding are now *res judicata*, and cannot be attacked, the case should be dismissed.

Plaintiff disagrees, arguing that it is the City that seeks to relitigate the underlying Code Enforcement hearing. Doc. 22 at 18. Plaintiff argues that it brought this case not to appeal the enforcement proceeding, but:

---

[8] The City notes, and Plaintiff does not dispute, that it filed an appeal of the Code Enforcement Board order in state court on March 12, 2021. Doc. 20 at 23. Because Plaintiff ultimately failed to file a brief, the appellate court dismissed the appeal on September 13, 2021, according to Temple Terrace. *Id.*

"to argue that the manner that the entire prosecution and continued attempt to foreclose on the Plaintiff's property are discriminatory and violative of the Plaintiff's rights under the Equal Protection Clause."

Doc. 22 at 18–19.

Thus, Plaintiff contends that the Amended Complaint brings claims for selective enforcement under the Equal Protection Clause, rather than an appeal of the Code Enforcement Board Order.

First, Temple Terrace fails to cite any relevant authority in support of its argument. Moreover, the City bases its argument on a dubious premise—that K&W must "overturn the C[ode] E[nforcement] B[oard]'s" legal and/or factual findings to prevail in this case. Doc. 20 at 25. Because a successful selective enforcement claim would not require such a finding, and the City fails to sufficiently develop this argument, the Court must reject it at this stage of the litigation.

First, Temple Terrace's argument that this case should be dismissed because Plaintiff "abandoned any further right to an appeal" is unpersuasive. Doc. 20 at 24. Plaintiff responds that this action is no appeal, but instead a lawsuit against the City for selective enforcement of the tree ordinance which was "discriminatory and bad faith conduct." Doc. 22 at 19.

The Court agrees that this suit does not appear to be an appeal of the Code Enforcement Board Order in style or in substance. Based on the elements of Plaintiff's claims, it does not appear that "overturning" any part of the order would be necessary for Plaintiff to prevail. A plaintiff alleging a selective-enforcement equal-protection claim must allege "disparate treatment compared to a similarly situated

party, whether [he or she] is alleging discrimination based on a suspect classification or under a 'class of one' theory." *Young Apts., Inc. v. Town of Jupiter, Fla.,* 529 F.3d 1027, 1045–46 (11th Cir. 2006); *see also Strickland v. Alderman,* 74 F.3d 260, 264 (11th Cir. 1996) ("[I]t must be establish[ed] that: (1) the plaintiff was treated differently than similarly situated persons; and (2) the defendant unequally applied the facially neutral statute for the purpose of discriminating against the plaintiff.").

Thus, neither type of selective enforcement claim would on their face require the Court to "overturn" any conclusion of the Code Enforcement Board. And Temple Terrace cites no cases in which an equal protection action was dismissed: (1) as an impermissible collateral attack on an underlying enforcement proceeding or; (2) as barred by the doctrine of *res judicata,* based on an underlying enforcement proceeding.[9] Temple Terrace's argument is thus unpersuasive for two reasons: the instant suit alleging selective enforcement does not appear to be an appeal of the Code Enforcement Board Order, and it cites no authority supporting its request for dismissal.[10]

**D. Plaintiff fails to allege a similarly situated comparator.**

---

[9] And to the extent the City intended to argue *res judicata* or any form of preclusion, it has failed here to put forward or argue the elements of such a defense, so this argument falls short.

[10] The Court makes no conclusion as to whether the fact that Plaintiff seeks relief in the form of a declaratory judgment rendering void the City Code Enforcement Board's February 15, 2021 Order constitutes an appeal of the Order or its findings. Doc. 17 at 9. Neither side briefs this issue, and Plaintiff fails to state a claim anyway, as discussed, *infra.*

Temple Terrace moves to dismiss the complaint based on Plaintiff's failure to allege a sufficiently similar comparator. Doc. 20 at 13–15. It argues that the Golf Course is insufficiently similar to Plaintiff's property to state a selective enforcement claim, and that it fails even more clearly as a comparator under the exacting standard for "class of one" claims. *Id.* at 13. Temple Terrace argues that differences in zoning, land use designations, and the fact that Plaintiff's property is privately-owned, whereas the Golf Course is city-owned, all weigh in its favor. *Id.* at 14. Temple Terrace goes on to assert that while the Golf Course was occupied and developed, Plaintiff's property was vacant and undeveloped. *Id.* Further, it argues that, critically, "[t]he City's ownership of the property permits it to ensure that its tree protection policy objectives are observed, thereby obviating the need for a permit under the City's tree ordinance, to say nothing of the inherent issues associated with the City citing and prosecuting itself for the code violations alleged by K&W." *Id.* at 15.

Plaintiff disagrees. It responds that Temple Terrace ignores "that [its] own elected officials deemed the properties similar." Doc. 22 at 11. Plaintiff alleges that emails attached to the Amended Complaint establish this by showing that the City Manager and Mayor identified the tree removal project on its Golf Course as one initiated by a private company "Temple Terrace Golf and Country Club," not by the City itself. *Id.* at 11–12. Then, according to Plaintiff, the officials went on to tell a citizen concerned about removal of trees on the Golf Course that "[t]ree removals according to current Florida Statute do not require direct involvement or approvals

from government entities" and that the City's "entire ordinance was preempted by the state legislature last year." *Id.*

Plaintiff describes Temple Terrace's explanation that Florida Statute § 163.045(1) barred it from enforcing the ordinance as an attempt to "shield" the Golf Course from the ordinance. *Id.* at 12. Plaintiff concludes (without citation to any specific allegations in the Complaint or emails) that Temple Terrace "did not find the [Golf Course]'s zoning or land use distinguishable from that of the Plaintiff," and that it nevertheless vigorously prosecuted Plaintiff and now seeks to foreclose on Plaintiff's property. *Id.* Plaintiff mentions in passing that its property is owned by two individuals of "Middle Eastern/North African descent." *Id.*

Overall, Plaintiff argues that the allegations of the Amended Complaint and its exhibits demonstrate that, "looking objectively at the incidents, they are equivalent." *Id.* Lastly, in a mere sentence of its response, Plaintiff states that "after the filing of the Amended Complaint," it became aware of an additional Code Enforcement case from several years prior to the instant dispute, in which Temple Terrace declined to prosecute an incident of tree removal based on Florida Statute Section 163.045(1). *Id.* at 13.[11]

---

[11] This lone sentence in Plaintiff's response alluding to another comparator, untethered to allegations or exhibits in the operative complaint, will not be considered on this Motion. Plaintiff cannot respond to substantive arguments in a motion to dismiss by adding or expanding on new allegations not contained in the operative complaint. *See Huls v. Liabona,* 437 Fed. Appx. 830, 832 n.4 (11th Cir. 2011) (per curiam) (holding that an argument was not properly raised where plaintiff asserted it for the first time in response to defendant's motion to dismiss, instead of seeking leave to file an amended complaint); *see Weakley v. Eagle Logistics,* 2017 WL 2929375, *2 (N.D. Ala. 2017).

After careful review, the Court agrees with Temple Terrace. Plaintiff fails to state an Equal Protection claim under either of its theories because its land is not similar in "all material respects" to the Golf Course, and the Golf Course is thus not a similarly situated comparator.

The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). A plaintiff alleging selective enforcement can either allege discrimination based on a suspect classification or use a "class of one" theory. *Young Apartments, Inc. v. Town of Jupiter, Fla.*, 529 F.3d 1027, 1045–1046 (11th Cir. 2008). Under either theory, a plaintiff must plausibly allege a "similarly situated" comparator. *See Griffin Indus. v. Irvin,* 496 F.3d 1189, 1204–05 (11th Cir. 2007) (finding that the "similarly situated" standard applies whether an equal protection claim is brought under a "class of one" theory or a traditional theory of unlawful discrimination).

To bring a "class of one" claim—that is, an equal protection claim that does not allege class-based discrimination—a plaintiff must allege it "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *accord Griffin Industries*, *Inc.,* 496 F.3d at 1202.

A plaintiff's proposed similarly situated comparator "must be sufficiently similar, in an objective sense, that they cannot reasonably be distinguished." *Lewis v. City of Union City*, 918 F.3d 1213, 1228 (11th Cir. 2019) (citing *Young v. UPS*, 575

U.S. 206, 231 (2015) (internal quotations omitted)). That is not to say that individual comparators—or here, their properties—must be similar in all ways. *Id.* at 228. For example, they need not be similar in a formalistic sense, such as by sharing the same job title (in the employment context). *Id.* Nevertheless, Plaintiff must plausibly allege "substantive likenesses." *Id.* Courts evaluate whether parties are similarly situated comparators on a "case-by-case basis." *Lewis,* 918 F.3d at 1227.

Furthermore, in conducting a comparator analysis, the Eleventh Circuit has stated that "governmental decision-making challenged under a 'class of one' equal protection theory must be considered in light of the full variety of factors that an objectively reasonable governmental decisionmaker would have found relevant in making the challenged decision." *Griffin Industries, Inc.,* 496 F.3d at 1203.

Courts have found, for example, that differences in proposed land use can be enough to distinguish comparators. *See Campbell v. Rainbow City*, *Ala.*, 434 F.3d 1306, 1314–1315 (11th Cir. 2006). *Campbell* considered a developer's equal protection challenge to a municipality's denial of approval for a proposed building project. *Id.* at 1309. The Eleventh Circuit first observed that a showing that two projects "were similarly situated requires some specificity," and further stated that the projects being compared "must be prima facie identical in all relevant respects." *Id.* at 1314. Ultimately, the Court rejected the plaintiff's purported comparators, finding that two proposed comparators were not similarly situated because the plaintiff sought approval for a large *residential* complex, whereas the comparators proposed

*commercial* developments. *Id.* at 1314–1315. The Eleventh Circuit explained that to be similarly situated (or "prima facie identical in all relevant respects"), the comparator's plan would need to similarly propose development of residential apartments, not a commercial or mixed-use plan. *Id.* at 1314. Moreover, the proposal would need to be of essentially the same size, have an equivalent impact on the community, and require the same zoning variances. *Id.* at 1316, n.8.

And as previously mentioned, *Griffin Industries* emphasized that a challenge to "the outcome of complex, multi-factored government decisionmaking processes" requires "similarly situated entities [to] be very similar indeed." 496 F.3d at 1207 (internal quotation marks and citation omitted). The plaintiff there, a chicken plant allegedly subject to more vigorous regulation than its competitors, was found not to be similarly situated to its proposed comparators because the plaintiff had recently increased the volume of its poultry rendering, and the increase in volume coincided with an increase in citizen complaints. *Id.* at 1194, 1206. Thus, the Court held that the city's issuance of violations for environmental complaints did not violate the plaintiff's equal protection rights because the city was allowed to consider the increased rendering volume as an "alarmingly high" environmental concern. *Id.* at 1207–1209.

In the real property context, the court in *Persaud Properties FL Investments LLC., v. Town of Fort Myers Beach, Fla.* dismissed a plaintiff's claim for failing to allege a similarly situated comparator. 658 F.Supp.3d 1072, 1085 (M.D. Fla. 2023) *appeal dismissed,* No. 23-10881-DD, 2023 WL 6141293 (11th Cir. Aug. 14, 2023). There, the

plaintiff owned commercial property, and the Town of Fort Myers Beach denied his request for a liquor license to be restored for the beach portion of its property. *Id.* The town had also issued violations for improper signage, beach chair rentals, and parking lots. *Id.* While the plaintiff failed to specifically allege other similarly situated comparators, it proffered four other commercial vendors who were allowed to transfer watersports vendor licenses. *Id.* The court dismissed the case with prejudice because it found the fact that the other four vendors were allowed to transfer watersports licenses did not make them "nearly identical" to the plaintiff, and that the plaintiff "failed to make even the barest allegation that it was treated differently than any other business on Fort Myers Beach because it has not identified a single, comparable business that was allegedly treated more favorably by the Town . . . with respect to liquor licenses, beach chair rentals, signs, or parking." *Id.* at 1086; *see also Rogers v. Jackson County, Fla.*, No. 23-11732, 2024 WL 1328900, *2 (11th Cir. Mar. 28, 2024) (dismissing plaintiff's class of one claim for failure to identify a similarly situated comparator—plaintiff had a raised land feature on his property while his neighbor did not).

Temple Terrace attempts to distinguish the Golf Course from Plaintiff's property based on their different land use classifications, zoning, and owner of the land. And they are correct regarding the differences they point out. As for land use and zoning, Plaintiff's property is residential, while the Golf Course property is zoned "PRS-preservation" and designated as a "District Park." Doc. 17 ¶¶ 16–18. Plaintiff admits this difference, noting that "[u]nlike the K&W Property, the Golf

Course property is not zoned for residential, and residential uses are not allowed on the Golf Course." *Id.* ¶ 18.

These differences are also relevant to Temple Terrace's decisionmaking. As discussed in *Griffin*, governmental decisionmakers deciding complex issues are allowed to consider the "full variety of factors" that are relevant to its decisions, and a plaintiff's burden for alleging a comparator in such instances is consequently high. 496 F.3d at 1203.

Based on the exacting standard the Court must apply (which presents an even higher burden for Plaintiff's class-of-one claim), the differences in development, land use, and zoning classifications between the two properties are likely enough to conclude that they are not similarly situated in all material respects. The final blow to Plaintiff's proposed comparator, however, is the fact the City of Temple Terrace itself owns the Golf Course, whereas Plaintiff is a private entity that owns private property. Plaintiff fails to rebut the City's key arguments as to this point: that the Golf Course is owned by the very same governmental entity charged with enforcing the tree ordinance, and that because the City owns the property, the need for it to obtain a permit for itself is obviated. Doc. 20 at 14. Although the Court makes no judgment on the wisdom or public policy implications of such an argument, Temple Terrace persuasively argues that based on zoning, land use, the level of development, and the fact that the City itself owns the Golf Course, the Golf Course and Plaintiff's property are not "sufficiently similar, in an objective sense, that they cannot reasonably be distinguished." *Lewis*, 918 F.3d at 1228 (internal citation omitted).

Plaintiff responds that Temple Terrace ignores the fact that its own elected officials deemed the properties similar. Doc. 22 at 11. Specifically, Plaintiff argues that emails show Temple Terrace did not "find the . . . [Golf Course]'s zoning or land use distinguishable from that of the Plaintiff" because the Acting Mayor stated "a property owner can now cut any trees they want and there is nothing the city can do about it anymore." *Id.* at 12. Whether or not the City properly described the state of the law in its emails to citizens, and even if the Florida state statute in fact did *not* preempt enforcement of the tree-removal ordinance, the Golf Course is not an adequate comparator under the law of this Circuit. As previously described, Plaintiff's property and the comparator property can be reasonably distinguished, and Plaintiff fails to cite any authority that supports its reliance on the City's emails to establish an adequate comparator.

As alleged in the Amended Complaint, the Golf Course and Plaintiff's property are thus not similarly situated, based on land use classifications, zoning, and the City's ownership of the Golf Course. Therefore, Plaintiff fails to plausibly allege the threshold element of either theory of its claim.

### E. Plaintiff also fails to plausibly allege intentional discrimination.

Temple Terrace further argues that Plaintiff's traditional selective enforcement claim is deficient for failure to plausibly allege intentional discrimination. Doc. 20 at 16. The City alleges that, at worst, it acted out of error, mistake, or arbitrary administration in the application of § 163.045 (1), Fla. Stat., and its tree ordinance. *Id.* Plaintiff responds by excerpting boilerplate allegations from its complaint at

length, including that the City unequally applied the ordinance for the purpose of discriminating against K&W and conducted such discrimination by fining Plaintiff, later foreclosing on its property, and ignoring unpermitted tree removal on the Golf Course. Doc. 22 at 14–15.

The Court agrees with the City that even if Plaintiff's property and the Golf Course were similarly situated comparators, Plaintiff fails to plausibly plead facts showing intentional discrimination, and its allegations of discrimination in the Amended Complaint are formulaic recitations of the elements of its cause of action.

Intentional discrimination must be purposeful. *E&T Realty v. Strickland*, 830 F.2d 1107, 1113 (11th Cir. 1987). It cannot be a "mere error or mistake in judgment when applying a facially neutral statute." *Id.* at 1114. Further, "error, mistake in judgment or arbitrary administration in applying a facially neutral statute does not violate equal protection." *Jones v. White*, 992 F.2d 1548, 1573 (11th Cir. 1993). Plaintiff fails to plausibly allege how Temple Terrace, through enforcing its ordinance, went beyond mere error or mistake to purposely discriminate against it.

Plaintiff notes in its response that it is "owned by two men of Middle Eastern/North African Descent," in an apparent attempt to augment the Amended Complaint and suggest racial discrimination.[12] Doc. 22 at 12, 16. Plaintiff also notes in its response that the Code Enforcement Board chair at some point "publicly

---

[12] The owners' ethnicities were mentioned in a copy of the Plaintiff's "Memorandum in Support of Fine Settlement/Elimination," a request to the Code Enforcement Board attached as an exhibit to the Amended Complaint. Doc. 17 at 46–51.

apologized for "anti-Muslim" statements." *Id.* at 16. As previously stated, a selective enforcement claim may entail discrimination on a suspect classification (such as race), but Plaintiff has failed to explicitly allege such discrimination. Further, Plaintiff cannot respond to substantive arguments in a motion to dismiss by adding or expanding on new allegations not contained in the operative complaint. *See Huls,* 437 Fed. Appx. at 832 n.4.

## IV.   Conclusion

As discussed *supra*, Plaintiff fails to plausibly allege a similarly situated comparator, a threshold requirement for either theory of its claim.[13] As relevant to its selective enforcement claim, Plaintiff also fails to allege intentional discrimination.

Temple Terrace asks that the Amended Complaint be dismissed with prejudice because there were "objectively reasonable reasons for treating [Plaintiff] differently." Doc. 20 at 21. However, because this is the Court's first order on the merits in this matter, and it is not clear that amendment would be futile, Defendant's Motion to Dismiss the Amended Complaint will be granted, without prejudice.

---

[13] The second prong of a "class of one" claim is that the plaintiff must show that defendant lacked a rational basis to treat the plaintiff differently. *Griffin Indus.,* 496 F.3d at 1202. In selective enforcement cases, making a determination as to whether Plaintiff has plausibly alleged that the defendant lacked a rational basis for its enforcement actions is a fact-intensive inquiry that Courts generally do not conduct when no adequate comparator has been identified. *See, e.g., Persaud Properties FL Invs., LLC,* 658 F. Supp. 3d at 1085 ("Because Persaud has failed to identify similarly situated comparators that were treated differently than Persaud, Persaud has failed to make out a prima facie case for class of one discrimination under the equal protection clause. *See Lewis,* 918 F.3d at 1231. Persaud's claim for equal protection clause violations against the Town are therefore due to be dismissed."); *see also Rogers,* 2024 WL 1328900. Therefore, the Court will do the same here and decline to discuss the second prong of the "class of one" claim.

Plaintiff will be given leave to amend the Amended Complaint to address the deficiencies discussed in this Order.

Accordingly, it is **ORDERED**:

1. Defendant City of Temple Terrace's Motion to Dismiss (Doc. 20) is **GRANTED**. Plaintiff K&W Property Group LLC's Amended Complaint (Doc. 17) is **DISMISSED WITHOUT PREJUDICE**.

2. Plaintiff is granted leave to file an amended complaint within **FOURTEEN (14) DAYS** which cures the deficiencies discussed in this Order. Failure to file an amended complaint by the time provided will result in dismissal of the case.

**DONE** and **ORDERED** in Tampa, Florida on September 3, 2024.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record